EDWARD MINTURN, COMPLAINANT AND APPELLANT, *v.* JAMES B. LARUE, CARLISLE P. PATTERSON, AND JOHN R. FOURATT.

The charter of the town (now city) of Oakland, in California, which conferred upon the corporation power to regulate ferries, did not give an exclusive power, and therefore the corporation did not possess the power to confer upon others an exclusive privilege to establish them.

The difference pointed out between this charter and those grants which are exclusive.

THIS was an appeal from the Circuit Court of the United States for the northern district of California.

Minturn filed his bill against the defendants, claiming a right, under the authorities of the town of Oakland, to establish a ferry, exclusively, between the city of San Francisco and the city of Oakland. The bill prayed for a perpetual injunction to restrain the defendants from running the steamboat San Antonio or any other steamboat or vessel between the two places. The defendants demurred to the bill, and the Circuit Court sustained the demurrer. The complainant appealed to this court.

The case was argued by *Mr. Johnson* for the appellant, and by *Mr. Stanton* for the appellees.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the United States for the district of California.

The bill was filed by the complainant in the court below to restrain the defendants from running a ferry between the city of San Francisco and the city of Oakland, on the opposite side of the bay, and which, it is claimed, is in violation of the ex-

clusive privileges belonging to him under the authority of law. The authority, as set forth in the bill, is derived from the charter of the town (now city) of Oakland. The 3d section of the charter (passed May 4, 1852) provided that "the board of trustees shall have power to make such by-laws and ordinances as they may deem proper and necessary;" among other things, "to lay out, make, open, widen, regulate, and keep in repair, all streets, roads, bridges, ferries," &c., "wharves, docks, piers, slips," &c.; "and to authorize the construction of the same;" "and with a view to facilitate the construction of wharves and other improvements, the lands lying within the limits aforesaid, (that is, of the corporation,) between high tide and ship channel, are hereby granted and released to said town."

It is admitted, if the authorities of the town of Oakland possessed the power under the charter to grant an exclusive right of ferries between that place and the city of San Francisco, the complainant has become vested with it. The question in the case, therefore, is, whether or not the power was conferred by this 3d section of the charter.

It is a well-settled rule of construction of grants by the Legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the Legislature must be resolved in favor of the public. This principle has been so often applied in the construction of corporate powers, that we need not stop to refer to authorities.

Now, looking at the terms of the grant in this case, and giving to them their widest meaning either separately or in the connection in which they are found, or with the object for which the power was conferred, we find, indeed, a power to establish and regulate ferries within the corporate limits of the town, but not an exclusive power. Full effect is given to the words in which the power is granted, when the simple right is conceded to establish and regulate ferries. If the

grant had been made to an individual in the terms here used, the question would have been too plain for argument. In our judgment, it can have no wider interpretation, though made to a corporation. It must be remembered that this is not the case where the Crown or the Legislature has aliened to a municipal corporation its whole power to establish and regulate ferries within its limits, as may be found in some of the ancient charters of cities in England and in this country. In those cases, the municipal body, in respect to this legislative or public trust, represents the sovereign power, and may make grants of ferry rights in as ample a manner as the sovereign. The error, we think, in the argument for the appellant is, in confounding this grant with these ancient charters, or those of a like character. But on referring to them, it will be seen that the form of the grant is very different, much more particular and comprehensive, leaving no doubt as to the extent of the power. (25 Wend. R., 631, Costar *v.* Brush.) So here: if the Legislature had intended to confer their whole power upon this corporation to establish and regulate ferries within its limits, or a power to grant exclusive ferry rights therein, a very different form of grant would have been used—one that would have expressed the intent of the law maker to part with the exclusive power over the subject, and vest it in the grantee. In the form used, no such intent appears or can be reached, except by a very forced interpretation, which we are not at liberty to give, according to well-settled authority. (11 Pet., 422; 8 How., 569; Mills et al. *v.* St. Clair Co. et al., 16 ib., 524, 534; Fanning *v.* Gregoire.)

In Mills *v.* St. Clair Co., the court, speaking of a ferry grant, said that in a grant like this by the sovereign power, the rule of construction is, that if the meaning of the words be doubtful, they shall be taken most strongly against the grantee and for the Government, and therefore should not be extended by implication beyond the natural and obvious meaning of the words; and if these do not support the claim, it must fall. And again, in Fanning *v.* Gregoire, speaking on the same subject, the court say: The exclusive right set up must be clearly expressed or necessarily inferred, and the court think

that neither the one nor the other is found in the grant to the plaintiff, nor in the circumstances connected with it.

As the town of Oakland had no power, according to the above construction of the charter, to establish an exclusive right of ferries within its limits, it follows that it did not possess the power to confer upon others an exclusive privilege to establish them.

The power conferred is to make (meaning to establish) and regulate ferries, or to authorize the construction (meaning the establishment) of the same.

We think the court below was right, and that the decree must be affirmed.