CASE 24—PETITIONS EQUITY—MAY 20.

# City of Newport v. Newport Light Co.
# Dueber Light Co. v. Same.

APPEALS FROM LOUISVILLE LAW AND EQUITY COURT.

1. MUNICIPAL CORPORATIONS—CONTRACT WITH GAS COMPANY.—It being the duty of a municipal corporation to light its public streets and to furnish its inhabitants with the means of obtaining gas at their own expense, where such a corporation has the power by

City of Newport v. Newport Light Co. Dueber Light Co. v. Same.

legislative grant to erect and maintain gas works for that purpose, it necessarily follows that it has the implied power to contract with others to furnish it in like manner, and may, therefore, by contract, grant to a corporation the *exclusive* right to the use of its streets for that purpose for a term of years.

2. INJUNCTION is the proper remedy to prevent a city which has, by contract, conferred such a privilege, from conferring a like privilege upon another corporation.

CHARLES J. HELM FOR APPELLANTS.

1. It is a condition precedent to the validity of the ordinance in question in these cases, that it should have been passed, etc., in the mode prescribed by the charter of the city of Newport. A municipality can only be bound by contracts entered into in the mode pointed out by the act conferring upon them the power to contract. (Dillon on Municipal Corporations, second edition, section 373; Craycraft v. Selvage &c., 10 Bush, 708; Averbeck, &c., v. Hall, 14 Bush, 505; Ormsby v. City of Louisville, 79 Ky., 197.)

2. The passage of the ordinance relied on is not well pleaded. Facts, and not conclusions, should be pleaded (Trustees of Bellevue v. Kahn & Trapp, 5 Ky. Law Rep., 130.)

WM. LINDSAY FOR APPELLANT, THE CITY OF NEWPORT.

1. As to power of city of Newport to procure gas and to regulate its use. (Acts of 1873–4, page 333.)

2. The city has power to construct, maintain, and operate gas and water-works, and to pass all ordinances necessary to regulate the same, provided that no existing contract shall be affected thereby. (Dillon's Municipal Corporations (third edition), section 89.)

3. This power is not to be extended by inference or implication. It is to be strictly construed and closely pursued. (Kniper v. Louisville, 7 Bush, 603.)

4. A municipality has no powers except those expressly granted or necessarily implied from an express grant. (Johnson v. Louisville, 11 Bush, 532; Henderson v. Covington, 14 Bush, 312.)

5. A municipality can not make contracts which create, or tend to create, monopolies, without express grant. (Dillon's Municipal Corporations, section 362.)

6. General grant of power to cause city to be lighted with gas does not include power to grant away exclusive use of streets. (Dillon's Municipal Corporations (third edition), section 692; State v. Cincinnati Gas Co., 18 Ohio St., 290.)

7. Municipal corporations must have express grant in order to confer exclusive privileges. (Dillon on Municipal Corporations (third edition), section 695; People v. Benson, 30 Barb., 24; City of Oakland v. Carpenter, 13 Cal., 540.)

8. City can not contract away power and duty to control use of streets for public convenience. (L., C. & L. R. R. Co. v. Louisville, 8 Bush, 407.)

9. Express delegation of power to grant exclusive privileges is subject to repeal. (Richmond Gas-light Co. v. Middleton, 59 N. Y., 228; Butchers' Association v. Crescent City Slaughter House, 111 U. S., 7.)

10. Injunction is not the proper remedy as against city. (Des Moines. Gas Co. v. Des Moines, 44 Iowa, 508; High on Injunctions, section 1246.)

11. As to implied power in private corporation to use or tear up streets or commit nuisance. (Fertilizing Co. v. Hyde Park, 97 U. S., 666.)

E. W. HAWKINS and RICHARD BUTLER HAWKINS on same side.

1. The contract between the city of Newport and appellee does not contain an *exclusive* grant to appellee to furnish gas, nor any grant for a specified period. Such grants are to be restricted rather than enlarged by construction, and are to be strictly construed and closely pursued. (Dillon on Municipal Corporations, section 89; Kniper v. City of Louisville, 7 Bush, 603; 11 Bush, 532; 14 Bush, 312; 11 Peters, 420; 27 N. Y., 87; 21 Penn., 22.)

2. The contract relied on by appellee reserves to the board of councilmen complete discretionary and legislative control over the quantity of gas to be supplied, whether much, little or none is required; and where matters are left to the discretion of such bodies, the exercise of that discretion in good faith is conclusive, and will not, in the absence of fraud, be disturbed. (High on Injunctions, section 1240; 32 Barb., 410, 702; 29 N. J., 164; 51 N. H., 422; 70 Ill., 65; 26 Barb., 133; 62 Barb., 630; 61 Barb., 121; 92 Ill., 372.)

3. Even if the contract gives the exclusive right to the use of the streets for the purpose of laying pipes therein for twenty-five years, the right to furnish gas exclusively for twenty-five years does not follow as a necessary sequence.

4. A municipal corporation can not grant to any other corporation a right exclusive for any period to lay pipes in its streets, unless power is conferred upon it by the sovereign power of the State to do so. (Dillon on Municipal Corporations, section 691; 18 Ohio St., 292; 13 Peters, 519.)

5. There can be no implied power in a municipal corporation to create a monopoly of any kind. (Dillon on Municipal Corporations, section 362; 45 Ill., 90.)

6. The contract relied on by appellee is inoperative and void, being forbidden by the first section of the thirteenth article of the State

City of Newport v. Newport Light Co.    Dueber Light Co. v. Same.

Constitution. (Citizens' Gas-light Co. v. Louisville Gas Co., 5 Ky. Law Rep., 72.)

7. There was never a regularly executed contract between the city and appellee. When the charter of a corporation prescribes the mode of contracting, that mode must be rigidly pursued. (Waite's Actions and Defenses, volume 4, page 603.)

HALLAM & MYERS AND JAMES C. WRIGHT, OF COUNSEL, FOR APPELLANTS.

CARLISLE & CARLISLE AND NELSON & WASHINGTON FOR APPELLEE.

1. Injunction was the proper remedy to prevent the city from repudiating its contract made with appellee, and from making a similar contract with another corporation. (High on Injunctions, section 695; The Jersey City Gas Co. v. Dwight *et al.*, 29 N. J. Eq., 242; Citizens' Gas-light Co. v. Louisville Gas Co., 81 Ky., 263.)

2. While municipal corporations can not barter away their legislative powers, they may contract the same as individuals; and the rules which govern the responsibility of individuals are applicable. (8 Bush, 420; 12 Ohio St., 377.)

3. The Dueber Company has no right to complain, for the reason that it has no franchise whatever in respect of the streets of Newport. A franchise does not belong to natural persons, and as the Dueber Company possesses under its charter no rights not possessed by a natural person, it has no right to lay pipes in the streets, which is a franchise. (Dillon on Municipal Corporations, section 546; 18 Ohio St., 292; 29 N. J. Eq., 242; 13 Peters, 519, 595.)

4. The city of Newport had no power to grant the privilege of laying pipes in the streets for the purpose of furnishing gas to *private consumers.* The city can grant no such privilege unless empowered to do so by the Legislature, either in express terms or by clear implication; and no such implication arises here, for the reason that the furnishing of private consumers with gas is not a corporate purpose or function.

5. The grant of a franchise is, by its own intrinsic force, exclusive against all except the State. (29 N. J. Eq., 249, 250.)

6. The notice required by section 5, chapter 56, General Statutes, is a condition precedent to any valid act by the corporation organized under that chapter, and, therefore, the publication of that notice should have been averred. (Field on Private Corporations, section 385; 14 Bush, 505.)

7. It is not essential that the Legislature grant the city, in express terms, the right to grant the exclusive use of the streets. It is sufficient if it flow by reasonable implication from the language used. (Dillon on Municipal Corporations, section 550.)

8. Cases explained: State v. Cincinnati Gas Co., 18 Ohio St., 292; City of Oakland v. Carpenter, 13 Cal., 540.
9. The privilege granted appellee is not a "public" privilege within the meaning of section one of the Bill of Rights; but if it were, the services rendered under it and growing out of it are "public" services within the meaning of that section.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This litigation is between the appellants, the City of Newport and the Dueber Light Company, on the one side, and the Newport Light Company on the other. The several actions were originally instituted in the Campbell Chancery Court, and transferred to the Louisville Chancery Court, and there heard and determined by the Vice Chancellor in favor of the Newport Light Company.

The Dueber Light Company filed its petition, alleging its existence as a corporation, created and organized under the provisions of chapter 56 of the General Statutes, and claims to have full power and authority to contract for and supply the inhabitants of the city of Newport with gas for illuminating and other purposes, and to have, hold, own and maintain all pipes, property and fixtures necessary for said purpose; further alleging that, as a corporation, it had been given full power, authority, and right, by the mayor and board of councilmen of the city, to enter upon the streets, lanes, alleys, and public places of the municipality, and upon any and all of its streets, etc., to lay their pipes and all necessary fixtures for supplying the citizens and inhabitants of the said city with gas for illuminating and other purposes, and that plaintiff is now in the full possession of, and entitled to the enjoyment of, those rights.

That on the third day of June, 1880, the mayor and board of councilmen of the city of Newport passed an ordinance, entitled "An ordinance further providing for the lighting of the city of Newport, Kentucky." Section 1 of that ordinance providing, "that from and after the passage of this ordinance there shall be, and is hereby, granted unto the Newport Light Company and their successors, the exclusive privilege of using any or all of the streets, lanes, commons, alleys, and public places of the city for the purpose of laying pipes to convey and supply gas to the city of Newport and others—this privilege for twenty-five years from the date hereof, and until the city shall give the company twelve months' notice to terminate the same, and embraces the right of said company to use said streets, lanes, alleys and public grounds for establishing and conducting said business."

It is also alleged that the (defendant) Newport Light Company, under and by virtue of said contract, was claiming and asserting the sole and exclusive right to the use of the streets, alleys, public places, etc., of the city of Newport, for the purpose of laying down its pipes and fixtures, that it might supply the city and its inhabitants with gas. That the city of Newport had no right, power or authority to grant to the Newport Light Company, or to any other corporation, such an exclusive right to the use of its streets for the period of twenty-five years, or for any other period of time, and, therefore, said grant is null and void. It is further alleged, that the Newport Light Company was ob-

172          KENTUCKY REPORTS.     [Vol. 84.

City of Newport v. Newport Light Co.  Dueber Light Co. v. Same.

structing and preventing the plaintiff from executing its contract. That its stock had not been fully paid, and the defendant, by the assertion of this exclusive right, was clouding the right and franchise of the plaintiff, and preventing it from conducting its said business, and delaying the payment of the stock subscription, and preventing the making of further subscriptions thereto.

A temporary injunction was granted, enjoining and restraining the Newport Light Company from asserting this exclusive right. The contract with the Dueber Light Company was made on the nineteenth of February, 1885.

An answer was filed to this petition by the Newport Light Company that was made a cross-petition against the city of Newport, and the city enjoined, at the instance of the Newport Light Company, from conferring upon the Dueber Light Company the right or privilege of laying pipes in its streets, alleys, public places, etc., for the purpose of supplying gas to the city or its inhabitants.

On the nineteenth of February, 1885, the Newport Light Company also filed its petition, by which an injunction was granted, enjoining the city of Newport from entering into the contract with the Dueber Light Company, or from conferring upon that company the right to enter upon its streets for the purpose of laying down its pipes, etc.

In this proceeding the contract between the Newport Light Company and the city, entered into in the month of June, 1880, is fully set forth, and the further averment that it had entered upon the

streets by laying down its pipes, etc., and was then and had been executing its part of the contract, and performing all the conditions thereof.

By the stipulations of the contract the Newport Light Company and its successors, from and after the eleventh of June, 1882, was given the exclusive privilege of using the streets, public places, etc., of the city, for the purpose of laying pipes to convey and supply gas to the city and others, said privilege to be so enjoyed and used for the term of twenty-five years from June 11, 1882, and until the city should give the company twelve months' notice to terminate the same.

The plaintiff was to furnish to the city upon its several streets, lanes and alleys, and public places in which pipes were laid, a continuous supply of gas equal in quality to Cincinnati gas, in such quantities as the defendant might require and direct for the use of the public streets, lamps and public buildings owned by it, at a fixed price for each one thousand cubic feet. That gas should be furnished the inhabitants of the city for their private consumption at rates as follows, viz: At one dollar and ninety cents per thousand cubic feet for the period of five years from June 11, 1882; at one dollar and eighty cents per thousand cubic feet for the period of five years from June 11, 1887; at one dollar and seventy-five cents per thousand feet for fifteen years from June 11, 1892. All public places, lamps, lamp-posts, and other requisite fixtures, to be furnished by the company and erected at such times, places, and in such numbers. where the main pipes

174          KENTUCKY REPORTS.          [Vol. 84.

City of Newport v. Newport Light Co.   Dueber Light Co. v. Same.

are laid, as the city may direct. The contract between the parties contained many other stipulations not necessary to be considered. The city of Newport, in its answer to this petition of the Newport Light Company, says that if there was a valid contract between the city and the Newport Light Company, which it denies, the same was superseded by a contract entered into between the two on the twenty-first of February, 1884. This subsequent alleged contract was attempted to be made, but never executed by either of the parties, and the principal question presented on the two appeals involves the right of the city of Newport to enter into the contract with the Newport Light Company, by which the latter was given the exclusive right to lay down its pipes on the streets of the city and furnish to the city and its inhabitants illuminating gas for the period of twenty-five years.

If that contract is valid, the judgment below perpetuating the injunction against the city and enjoining the Dueber Light Company from laying its pipes in the streets for the purpose of providing gas to the city and its inhabitants, was proper and must be affirmed.

The act incorporating the Newport Light Company provided, that "*it might furnish any city, town, district, corporation, or locality, or any public institution, manufacturing establishment, or private persons with gas or other light for such time and upon such terms as may be agreed upon by the parties.*"

The charter of the city of Newport empowered that municipality "*to construct, maintain and oper-*

*ate gas-works, and to pass all ordinances necessary to regulate the same.*"   (Acts 1873–'74, page 337, section 10.)

It is plain from this part of the city's charter, that its council had the right not only to construct gas-works and enter upon the streets for the purpose of laying down pipes, but it was, in effect, a general grant of power to have the city lighted with gas, and to contract with the Newport Light Company or others to furnish it upon such terms as the parties might agree.   While grants of power to such corporations are to be strictly construed, the object sought to be accomplished must be considered, and being invested with the right to light its streets with gas, or to construct and maintain gas-works for that purpose, its right to contract under such a power is unquestioned.

So each of the contracting parties, clothed with legislative authority for the particular purpose, have contracted with reference to this franchise, and the Newport Light Company had entered upon the streets of the city, and at the institution of these actions was in the undisturbed enjoyment of the franchise under its contract, and in the actual discharge of its obligations to the city by reason of its stipulations.   It is insisted by counsel for the Dueber Light Company, that while the Newport Light Company may have been permitted to lay down its pipes in the streets of the city, it has no such exclusive right as will prevent the city from granting the same right to another corporation.

If a mere license or permission to use these streets

is the only grant made or privilege conferred on
the Newport Light Company, it may well be argued
that similar privileges may be granted to others.
But the claim of the appellee (the Newport Light
Company) to the exclusive use of the streets is based
upon a contract entered into between it and the
city of Newport, by which an obligation was created
on the part of the company to the city to fur-
nish gas to the public and to the private consumers
for the period of twenty-five years, and this obliga-
tion was the consideration for the grant of the fran-
chise. If the city could make such a contract for
the use of its streets, no such question as that of an
exclusive privilege can arise. A mere license or use
of a public street to a private corporation, although
devoted to a public use, does not confer an exclusive
privilege; but where it is incumbent on a municipal
corporation to furnish light and water for the public
use and that of its inhabitants, the right to exer-
cise the power to supply such wants might well be
argued as within the range of legitimate municipal
legislation.

It may be regarded, however, as well settled that
the right to use the street of a city by a gas com
pany to enable it to lay down its pipes, "is a fran-
chise that can be granted only by the Legislature
or some local or municipal authority authorized to
confer it." (Dillon on Municipal Corporations, sec-
ond volume, section 691.)

"However it may be as respects the power of the
Legislature to make the grant exclusive, no such
power, it is clear, can be exercised by a municipal

council, unless it be plainly conferred by express words, or by necessary or at least reasonable impli- cation." (Dillon on Municipal Corporations, section 695.)

If it is the duty of the municipality to light its public streets and to furnish its inhabitants with the means of obtaining gas at their own expense, and having the power by legislative grant to erect and maintain gas-works for that purpose, it necessarily follows that it has the implied power to contract with others to furnish it in like manner; and where there is a valid contract to that effect, we perceive no reason why it should not be enforced, or governed by the same rules applicable to contracts between natural persons.

It will not be contended that the city, through its council, can enter into such a contract in discharge of a public duty, and then violate its provisions at the will and pleasure of the council, or disregard its obligation when terms more favorable are offered by some other corporation.

Nor do we perceive the philosophy of the rule that prevents the municipality from contracting with an individual or a corporation to furnish gas to the city or its inhabitants for a fixed and definite period, if the right to contract is derived from the sovereign power.

"A private corporation, as well as individuals, may be employed by a city to aid in the construc- tion of works needed for the health, comfort and convenience of its citizens." (New Orleans v. Clark, 95 U. S. Supreme Court, 644.)

In the present case the private corporation, known
as the Newport Light Company, is invested in ex-
press terms, by a provision contained in its charter,
with the right "to furnish any city, town, district,
corporation or locality, or any public institution,
manufacturing establishment or private premises, with
gas, or other light, *for such time and on such terms
as may be agreed on by the parties.*" Under that
power it contracted with the appellant (the city of
Newport) to furnish it gas for the use of the public
and its inhabitants for twenty-five years, with the
exclusive right to the use of its streets for the pur-
pose of laying down its pipes. It expended largely
over one hundred thousand dollars to enable it to
execute its contract—has violated none of its provis-
ions, and the city is now maintaining that the con-
tract is void as to the exclusive privilege conferred,
and binding only to the extent that the corporation
can furnish gas for such public use as may be re-
quired by .the city. That the Dueber Light Com-
pany should be allowed to lay down its pipes, and
furnish to such of its inhabitants as may choose to
purchase its gas at a less price, leaving the appellee
with this large expenditure, with no other return
from the investment than the small sum to be real-
ized from lighting the streets of the city.

It is conceded by the Dueber Light Company that
the city of Newport had the right to contract with
the Newport Light Company, but, like the city of
Newport, it insists that the provision of its contract
conferring the exclusive privilege is void.

The cases of the State v. Cincinnati Gas Company,,

18 Ohio St., 262, and the Norwich Gas-light Company
v. The Norwich City Gas Company, 25 Conn., 19, and
the general doctrine laid down by Dillon on Corpora-
tions, is relied on to sustain this view of the ques-
tion.

The question of exclusive privileges, the creation
of monopolies and the want of consideration or mu-
tuality in the contracts, controlled the decisions in
those cases, and, we may add, the rule of law recog-
nized in those cases, and the reasoning upon which
they are based, or in the cases following them, has
not been sustained or approved in the recent decis-
ions of the Supreme Court in cases involving like
questions.

In the case of the New Orleans Gas Company v.
Louisiana Light Company, 115 U. S., 665, the Su-
preme Court, through Mr. Justice Harlan, said: "It
is difficult to perceive upon what ground we can
deny her authority (the State), when not forbidden
by her organic law—in consideration of money to
be expended and important service to be rendered
for the promotion of the public comfort, the public
health or the public safety, to grant a franchise,
to be exercised exclusively by those who thus do
for the public what the State might undertake to
perform either herself or by subordinate munici-
pal agencies;" and again: "The constitutional pro-
hibition upon State laws impairing the obligation of
contracts, does not restrict the power of the State
to protect the public health, the public morals, or
the public safety, as the one or the other may be
involved in the execution of such contracts." (Page
672.)

Nor is legislation of this character "liable to the objection that it is a mere monopoly, preventing citizens from engaging in an ordinary pursuit or business open as of common right to all, upon terms of equality; for the right to dig up the streets and public ways of New Orleans, and place therein pipes and mains for the distribution of gas for public and private use, is a franchise, the privilege of exercising which could only be granted by the State or by the municipal government of that city acting under legislative authority." (New Orleans Gas Company v. Louisiana Light Company, 115 U. S., 659.) See also Louisville Gas Company v. Citizens' Gas Company, 115 U. S., 683; New Orleans Water Works v. Rivers, 115 U. S., 674.

The power of the Legislature or the city of Newport, under legislative authority, to grant an exclusive privilege is not, therefore, involved in this case. It is purely a question of contract; and if the city of Newport had the right to contract with the appellee to furnish gas to the city and to such of its inhabitants as might desire to use it, the contract should be enforced, and neither the city nor any individual or corporation can interfere with its rights under it.

Exclusive privileges can only be granted in consideration of public services; but this provision of the Bill of Rights has no application to this class of contracts, nor does the exercise of the police power for the protection of the public health or public morals affect the questions involved.

The contract for the supply of gas in this case must necessarily be exclusive. Each party had the

right to contract, and by its stipulations the appellee is bound to furnish gas to all buildings along the lines of these main pipes when compensation is made or offered to be made, as required by the contract. The city has exhausted its power, and done that which, under legislative authority, it had the right to do, and besides, contracted with the appellee, that by the terms of its charter had been invested with the special privilege of entering into such contracts. Nor do we perceive how a contract could well be made without any limit as to time or restrictions in some way upon the rights of the parties making it.

The contract with the appellee may have been injurious to the best interests of the city; but however that may be, having been entered into by the properly constituted authorities, upon a consideration that they deemed adequate and proper, there is no reason for disregarding its provisions.

The Chancellor is powerless to relieve the municipality of the consequences resulting from an improvident contract, where its council had the power to execute it. In order to the discharge of a public duty that consisted not only in lighting its streets and public places, but in placing gas within the reach of its inhabitants, the city has been given the right to the use of the streets for that purpose.

The private citizen had no right to the exercise of the franchise, and while the mere privilege of laying down pipes in the streets, or rails upon the surface for street railways, for private gain, and without any obligation on the part of the company

undertaking it that can be enforced, can not be made exclusive, when parties have contracted, by the direction of the sovereign power, to discharge a public duty that is not only necessary but indispensable to both public and private interests, the contract is as sacred as if made between individuals competent to contract in matters affecting the right of private property, and must be controlled by the same general principles applicable to all contracts. We must interpret this class of contracts and the legislation under which they are made (as in all other cases of contracts) in the light of reason, and with a view of carrying into effect the legislative intent. The exercise of the franchise was necessary to accomplish the object in view. It was indispensable to enable the appellee to comply with its terms, and no individual or corporation would have invested such a large sum of money as is conceded was requisite for a compliance with the demands of the municipality, with the privilege on the part of the council to abandon its terms in part, at least, because other contracting parties were offering terms less expensive to the city or its inhabitants—an expenditure of over one hundred thousand dollars in 1882 that it could be deprived of, or the profits at least, in 1885.

The contract with a corporation is as inviolable, when the right to contract exists, as with natural persons. The city council of Newport, looking to the comfort and convenience of its population and the public welfare, has contracted with the appellee to furnish gas for a fixed period. There is no pre-

tense that any of its provisions have been violated by the appellee, or that it has any of the elements of fraud or mistake fatal to any contract, and, therefore, the law should recognize its validity and enforce its obligation.

The right of the appellee to seek protection from the Chancellor to preserve the franchise is now a familiar rule of equity jurisprudence. (Jersey City Gas Company v. Dwight, 29 New Jersey Eq., 242.)

With this view of the questions presented, it becomes unnecessary to determine the power of the Dueber Light Company to enter into such contracts.

In our opinion the judgment of the Vice Chancellor was proper, and is, therefore, affirmed.