WATER, LIGHT & GAS CO. v. CITY OF HUTCHINSON et al.

(Circuit Court, D. Kansas, Second Division. January 27, 1906.)

1. MUNICIPAL CORPORATIONS—POWERS—GRANTING OF EXCLUSIVE FRANCHISES.

The power to grant an exclusive franchise to a water, gas, or electric light company, to use the streets of a city, resides in the state, and cannot be exercised by a municipal corporation, unless delegated to it by the Legislature, either expressly or by necessary implication.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 175, 757, 1459–1470.]

**2. SAME—CONSTITUTION AND STATUTES OF KANSAS.**

Under the Constitution of Kansas, which confers no powers upon municipal corporations, but authorizes the Legislature to provide for their organization and the limitation of their powers, and the statutes of the state relating to cities of the second class, which contain no grant of power, either directly or by implication, to grant exclusive rights in the streets, such a city has no power to enter into a contract by which it gives an exclusive right for a term of years to a company to use its streets for the purpose of supplying water, gas, or electricity to the city, and its inhabitants and such a contract is ultra vires, and void, as to its exclusive feature.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 175, 757, 1459–1470.]

In Equity. On demurrer to amended bill.

H. Whiteside, H. S. Lewis, and Waggener, Doster & Orr, for complainant.

A. C. Malloy and Prigg & Williams, for defendants.

POLLOCK, District Judge. As shown by the bill of complaint presented, defendant, the city of Hutchinson, a city of the second class under the laws of this state, by Ordinance No. 402 of that city, duly passed and approved March 5, 1897, and thereafter duly published, upon sufficient consideration entered into a contract with the Hutchinson Water, Light & Power Company, a domestic corporation of this state, to supply said city and its inhabitants with water and light for a period of 20 years. Said contract, as shown from the terms of the ordinance, was a compromise and adjustment of rights arising between the parties under the terms of prior contracts theretofore entered into and then existing. The preamble to and so much of said Ordinance No. 402 as is deemed material to the consideration of the controversy now arising for decision, reads as follows:

"An ordinance to provide for a system of water works, electric light works and gas works, and supply of water, electric current and gas to the city of Hutchinson and the inhabitants thereof.

"Whereas, the Hutchinson Water, Light & Power Company is the owner of certain exclusive franchises and contracts with the city of Hutchinson, under which and in accordance with which the said company has expended large sums of money in constructing and building water works, electric light works and gas works, and in building up the business of said works, which are now in successful operation in supplying the city of Hutchinson and the inhabitants thereof with water, electric current and gas for all purposes for which water, electric current and gas is used; and whereas, the city of Hutchinson is desirous of modifying and changing said franchise and contracts to the advantage of said city of Hutchinson without cancelling or abridging any of the rights or privileges vested in said company by reason of its labor and investments under said franchises and contracts other than the modifications hereinafter specified:

"Therefore, in consideration of the surrender of all the existing contracts and franchises of said company with the city of Hutchinson, excepting as hereinafter specified:

"Be it ordained by the mayor and council of the city of Hutchinson, Kansas:

"Section 1. That there is hereby given and granted to the Hutchinson Water, Light & Power Company, of Hutchinson, Kansas, its successors or assigns, the exclusive right and privileges for the term of twenty years from the date of the passage and approval of this ordinance of supplying the city of Hutchinson, Reno county, Kansas, and the inhabitants thereof, by a system of works with water for the prevention and extinguishment of fires and for all other purposes for which water may be used [said water works to be the

Holly system]; with electric current for electric light and power, and for all other purposes for which electric current may be used, except power for the operation of street railways, which exception shall not prevent said Water, Light & Power Company from furnishing electric currents to street railways for any and all purposes; and with' gas for lighting, heating and for fuel, and for all other purposes for which gas may be used, in accordance .with the terms and conditions set forth in this ordinance.

"Sec. 2. That said Hutchinson Water, Light & Power Co., its successors or assigns, is hereby authorized to maintain, extend and operate said works 'in or adjacent to the city of Hutchinson, to receive, take store, purify, conduct and distribute said water, electric current and gas through said city, to construct and extend aqueducts, mains, pipes and erect poles and wires through all the streets, alleys, lanes and public grounds and to cross any stream or bridge in said city, to erect and maintain all engines, machinery and other appliances necessary for conducting any of said works, and for supplying said city and the inhabitants thereof with water, electric current and gas for the the purposes herein mentioned, and for such purposes the said Hutchinson Water, Light & Power Company, its successors or assigns, shall have the right, and is hereby authorized to use the streets, alleys, avenues, lanes and public grounds in or adjacent to said city, and shall have the right to take up any pavements or sidewalks, and make such excavations therein as may be necessary to lay, repair and maintain aqueducts, mains and pipes below the surface of the ground for conveying and distributing the water and gas, and for erecting poles for electric wires as aforesaid. * * *

"Sec. 4. The said city of Hutchinson hereby agrees to rent, and does rent for fire protection, the one hundred and eighty-five (185) fire hydrants now located on the mains of the said water works from the Hutchinson Water, Light & Power Company, its successors or assigns, for the full term of this contract, and the said city of Hutchinson will pay for the use of said one hundred and eighty-five (185) hydrants an annual rent of $6,000, payable semiannually on the first days of May and November of each year, less $1,000 per year rebate for two years from the passage of this ordinance, payments to be made as hereinafter specified. For all hydrants located on extensions hereafter ordered by the city council, as specified in section 3 of this ordinance the city of Hutchinson agrees to pay thirty-six dollars ($36.00) per annum for each hydrant so located, payments to be made as hereinafter specified. The said Hutchinson Water, Light & Power Company shall furnish water for sprinkling the streets of the city of Hutchinson at the rate of $12.50 per month for each wagon or sprinkler used in sprinkling said streets for one year from and after the date of the passage and approval of this ordinance, and for the next succeeding year, or second year after the passage and approval of this ordinance, the said Hutchinson Water, Light & Power Company shall furnish water for such street sprinkling purpose at the rate of $15.00 per month for each wagon or sprinkler used in sprinkling said streets. * * *

"Sec. 8. The city of Hutchinson shall have the right to purchase the works,' property and business created, acquired, constructed and contemplated under this contract at any time after the expiration of ten years from the adoption of this ordinance, upon giving one year's notice to the owners of said property and upon paying to said owners a fair value for the same as may be mutually agreed, or 'fixed by a court of competent jurisdiction. Said one year's notice may be given at any time after the expiration of nine years from the date of the passage and approval of this ordinance. * * *

"Sec. 13. The city of Hutchinson hereby agrees that it will pass all necessary ordinances for the protection of the property of the said water works, electric light works and gas works; to prevent the contamination of the water supply; . to prevent the waste of water from the hydrants, mains and pipes; to prevent all interference with its poles and wires, and that it will upon request of the said Hutchinson Water, Light & Power Company, its successors or assigns, proceed without delay to exercise its rights under the statutes of the state of Kansas, in the matter of the condemnation of any lot, parcel or piece of ground, or of water, or water privileges that may be necessary to the proper and convenient construction, maintenance and operation of the system of water, gas and electric light works contemplated in this ordinance.

"Provided, That the said Hutchinson Water, Light & Power Company, its

successors or assigns, pay all costs and expense incident thereto, including the cost of all property so condemned, and,

"Provided, farther, That the right to free and exclusive control of all property so condemned shall rest and remain in the said Hutchinson Water, Light & Power Company, its successors or assigns.

"Sec. 14. If the said Hutchinson Water, Light & Power Company, its successors or assigns, shall refuse to operate the water system contemplated in this ordinance at any time, that part of this franchise relating to the water system shall be forfeited, unless such failure to operate is unavoidable or due to accident.

"Sec. 15. Nothing in this ordinance shall prevent any person or company from manufacturing gas, electricity or any other material for his own or their own use for light or fuel, but in no case shall such persons supply others with gas or electric current for any purpose."

Thereafter, complainant in this suit, a corporation of New Jersey, by purchase became and now is the lawful successor in right of all the property, franchises and rights of the domestic contracting company. On the 15th day of December, 1905, the defendant city of Hutchinson duly passed an Ordinance No. 651 of the city, contracting with and granting unto defendants Emerson Carey, K. E. Sentney, C. M. Williams, C. H. McBurney, A. W. Smith, and J. S. George, their successors and assigns, certain rights and privileges of constructing and operating a line of street railway in said city, and of furnishing said city and its inhabitants with electric light and gas for light, power, and heating purposes. So much of said ordinance as is deemed material here reads as follows:

"An ordinance granting permission and authority to Emerson Carey, K. E. Sentney, C. M. Williams, C. H. McBurney, A. W. Smith, and J. S. George, their successors or assigns, to construct and operate a street railway in and along the streets and avenues of the city of Hutchinson, Reno county, Kansas, and to construct, operate and maintain an electric plant for the purpose of furnishing electric current for electric lights and power for all other purposes for which electric current may be used, and to construct, operate and maintain a gas plant for heating, lighting and fuel and for all other purposes for which gas may be used and prescribing certain regulations and relations thereto.

"Be it ordained by the mayor and councilmen of the city of Hutchinson, Kansas:

"Section 1. That consent, permission and authority are hereby given and granted to Emerson Carey, K. E. Sentney, C. M. Williams, C. H. McBurney, A. W. Smith, and J. S. George, their successors or assigns, to construct, run and operate for a period of fifty years from and after the publication of this ordinance, a single or double track street railway, with all necessary sidetracks, turnouts, switches and curves in and along the streets and avenues mentioned in section 12 of this ordinance and upon such other streets and avenues of said city for which the city council may hereafter grant permission, or where the owners of a majority of the front footage between the terminal points of the tracks upon such streets and avenues shall consent in writing to this council to the construction and operation of a street railway thereon and to keep, maintain and operate thereon street railway cars and carriages in the manner and in accordance with the conditions and provisions hereinafter set forth. *  *  *

"Sec. 21. There is hereby given and granted to the said Emerson Carey, K. E. Sentney, C. M. Williams, C. H. McBurney, A. W. Smith, and J. S. George in connection with the privileges and rights conferred in the above and foregoing sections, the further right and privilege for the term of twenty years from the date of the passage and approval of this ordinance of supplying the city of Hutchinson, Reno county, and the inhabitants of said city and county with electric current for electric light and power and for all other purposes for which electric current may be used and for such purpose said grantees are hereby authorized and permitted to erect poles and wires through

all the streets, alleys, lanes and public grounds and to cross any stream or bridge in said city to erect and maintain all engines, machinery and other appliances necessary for the conducting of said work and for the supplying of said city, said Reno county and the inhabitants of said city and county with electric light and power.

"Sec. 22. The said grantees herein, their successors or assigns shall not at any time use the poles, wire and other appliances provided for in this ordinance in such a manner as to hinder or obstruct the commerce or trade of the city of Hutchinson, nor obstruct the proper use of the streets, alleys, lanes, avenues, public grounds or other public places excepting as may be necessary temporarily to make repairs, or extensions or improvements to its property and works.

"Sec. 23. That in addition to the rights and privileges heretofore granted, there is granted to. said Emerson Carey, K. E. Sentney, C. M. Williams, C. H. McBurney, A. W. Smith, and J. S. George, their successors or assigns, the further right and privilege for the term of twenty years from the date of the passage and approving of this ordinance of supplying the city of Hutchinson, Reno county, Kansas, and the inhabitants thereof with gas, either manufactured or natural and for such purpose shall have the right and privilege to construct and maintain mains, pipes and other conduits in the streets and alleys of said city. * * *

"Sec. 28. The city of Hutchinson hereby agrees that it will pass all necessary ordinances for the protection of the property of the said grantees herein, their successors and assigns of their street railway and its machinery, electric works and gas works, and to prevent interference with the poles and wires, or the convenient construction, maintenance and operation of the same."

This suit was brought to enjoin and restrain the defendant city, its mayor and council, and the persons named contracting with the defendant city by the terms of Ordinance No. 651, from in any way proceeding under the terms of said ordinance toward the doing of any public service which complainant might do under the terms of Ordinance No. 402, upon the ground that complainant has the exclusive right for the period of time mentioned therein, 20 years, which time has not expired, to furnish such public service to the city and inhabitants thereof. The prayer of the bill reads:

"That a writ of injunction be issued commanding the defendants and all persons claiming to act under their authority and direction to refrain and desist from doing any acts or exercising any pretenses of right to act under the aforesaid Ordinance No. 651 granted to defendants as aforesaid which will in any wise affect the exclusive rights of your orator to furnish the said city and its inhabitants with electric or gas light for lighting and heating purposes or power except for street cars and electric railways, and also from making or proceeding to make any contract for furnishing light or gas to said city and its inhabitants until the expiration of the aforesaid franchises and contracts of your orator with said city."

Defendants have appeared to this bill and demur for want of equity. The questions arising for determination are: (1) Did the city, by Ordinance No. 402, grant or attempt to grant unto the corporation therein named exclusive right for the period of time therein named of furnishing the city and its inhabitants with electric light and gas for heating, light and fuel; such period of time not having expired; (2) if so, did the city possess the power inherent or under the law of its creation to make an exclusive contract, binding itself and inhabitants to receive and pay for water, light, heat, and power from the corporation there contracted with for the period of 20 years to the exclusion of all others? If these questions are answered in the affirmative, then it is clear the demurrer must be overruled, and

complainant may maintain this suit to protect its franchises and contract rights from violation at the hands of the defendants. Jersey City Gas. Co. v. Dwight, 29 N. J. Eq. 242; City of Newport v. Newport Light Co., 84 Ky. 166.

While the exclusive right of complainant to furnish the defendant city with water under its franchise is not here challenged, and while complainant by the terms of Ordinance No. 402 does not obligate itself to the city to furnish light, heat, or power, yet, assuming for the purpose of decision the contract made by Ordinance No. 402 between the defendant city and complainant as successor of the Hutchinson Water, Light & Power Company, is in terms exclusive, and was intended to be so by the city at the time it was made, the important and principal inquiry still remains, did the city at the time the ordinance was passed possess the power to make a contract binding and exclusive of all others for the period of twenty years? If so, it follows, of necessity, the demurrer must be overruled. If not, it should be sustained, for the sole purpose of this suit, as has been seen, is to nullify the action of the city in the making of the subsequent contract upon the one ground alone of the exclusive character of the former grant. In the light of authority it must be conceded the power to make the exclusive contract contended for by complainant resides in the state, and may be delegated by it to a municipal agent, such as the defendant city, and, when delegated, the city becomes possessed of the power by contract to exclude, not only other persons and corporations thereafter desiring to contract with it for the performance of a public service for a given period of time, but also to obligate itself during such term not to undertake the performance of such public service, and such contract rights will receive protection from the courts under the federal constitution. Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341.

It therefore becomes important in this inquiry to determine first of all, the precise power inherent in or conferred upon the defendant city to contract with the Hutchinson Light & Power Company. The defendant city, as a municipal corporation of this state, is purely a creation of statutory law. Our Constitution recognizes, but does not confer, any power upon cities of the state. Section 5, art. 12, provides:

"Provision shall be made by general law for the organization of cities, towns and villages; and their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, shall be so restricted as to prevent the abuse of such power."

As the full measure of power reserved by the state, unsurrendered to the general government upon its admission into the Union, remains in and can be exercised alone by the state, except as such power has been by the Legislature of the state delegated to its municipal corporations and other agents, as a necessary and inevitable sequence it must follow, there is no inherent power in the defendant city to make the contract claimed. Citizens' St. Railway v. Detroit Railway, 171 U. S. 48, 18 Sup. Ct. 732, 43 L. Ed. 67. And as the organic law of the state confers no power upon the cities of the state, but merely empowers the legislative branch of the state to organize cities under general laws and to restrict their powers, the power of the defendant

city to make the exclusive contract claimed by complainant to exist must be found, if at all, either in the charter of the contracting company or in the provisions of the second class cities' act of this state, in force at the time of the passage of the ordinance, for this act is the organic law of the city. What was the measure of power conferred upon the corporation and the city, and how must the statutory law granting such power be construed by the courts? The contracting company, having been created under the general incorporation laws of the state, did have the power "to enter into any obligation or contract essential to the transaction of its ordinary affairs." Section 25, c. 23, art. 3, Gen. St. Kan. 1901. While this grant of power might suffice to enable the company to enter into an exclusive contract with the city, it is not contended, and cannot be contended, it conferred any such power upon the city to so contract. Hence, the power claimed to have been conferred upon the city must be found, if it exists, in the organic law of the city; that is, in the second class cities' act, and such amendments thereto as were in force at the date of the making of the contract in question. Looking now to this act we find the following statutory provisions bearing upon this question. Section 35 of the act (Gen. St. Kan. 1901, p. 225) provides the general powers of the mayor and council of such city, and reads as follows:

"The mayor and council of each city governed by this act shall have the care, management and control of the city, and its finances, and shall have power to enact, ordain, alter or repeal any and all ordinances not repugnant to the constitution and laws of this state, and such as it shall deem expedient for the good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be necessary to carry such power into effect."

Section 65 of of the act (page 232) provides:

"The council may provide for and regulate the lighting of the streets, and the erection of lamp posts, and the numbering of the buildings in the city, and the construction of sewers; and the council shall have power to make contracts with any person, company or association for such purposes, and give such person, company or association the privilege of furnishing light for the streets, lanes or alleys of said city for any length of time not exceeding twenty-one years."

Section 83 of the act (page 237) provides:

"That cities of the second class of the state of Kansas are hereby granted full power and authority, on behalf of said cities to purchase, procure, provide and contract for the construction of and construct water works, electric light and gas plants, for the purpose of supplying such cities and the inhabitants thereof with water, light and gas for domestic use and any and all other purposes."

Judge Dillon in his work on Municipal Corporations (4th Ed.) § 89, says:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power

is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void."

In Minturn v. Larue et al., 23 How. 435, 16 L. Ed. 574, Mr. Justice Nelson, delivering the opinion of the court, says:

"It it a well-settled rule of construction of grants by the Legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the Legislature must be resolved in favor of the public."

Judge Jackson in Grand Rapids E. L. & P. Co. v. Grand Rapids E. E. L. & F. G. Co. (C. C.) 33 Fed. 659, says:

"To confer exclusive rights and privileges, either in the streets of a city or in the public highways, necessarily involves the assertion and exercise of exclusive powers and control over the same. Nothing short of the whole sovereign power of the state can confer exclusive rights and privileges in public streets, dedicated or acquired for public use, and which are held in trust for the public at large. This brings us directly up to the inquiry whether the Legislature of Michigan has delegated to the city of Grand Rapids the state's sovereign power and control over the streets of that municipality. If the charter powers of the city have invested it or its common council with the whole sovereign power and exclusive control over the streets within its limits, it might lawfully confer upon the complainant the exclusive right of user, which the ordinance of 1880 undertook to grant. If, however, the city or its common council possessed no such exclusive power and control, then the grant which it attempted to make to complainant was "ultra vires," and therefore void, so far as it purports to confer exclusive privileges in or over the streets of the city."

Mr. Justice McKenna, delivering the opinion of the court in Citizens' St. Railway v. Detroit Railway, 171 U. S. 48, 18 Sup. Ct. 732, 43 L. Ed. 67, says:

"It is clear that the statute did not explicitly and directly confer the power on the municipality to grant an exclusive privilege to occupy its streets for railway purposes. It is urged, however, that such power is to be inferred from the provision which requires the consent of the municipal authorities to the construction of a railway under such terms as they may prescribe, combined with the provisions of the Constitution, which, if they do not confer a power independent of the Legislature, strongly provide for and intend local government. The argument is strong, and all of its strength has been presented and is appreciated, but there exist considerations of countervailing and superior strength. That such power must be given in language explicit and express, or necessarily to be implied from other powers, is now firmly fixed. There were many reasons which urged to this—reasons which flow from the nature of the municipal trust—even from the nature of the legislative trust, and those which, without the clearest intention explicitly declared, insistently forbid that the future should be committed and bound by the conditions of the present time, and functions delegated for public purposes be paralyzed in their exercise by the existence of exclusive privileges. The rule and the reason for it are expressed in Minturn v. Larue, 23 How. 435, 16 L. Ed. 574; Wright v. Nagle, 101 U. S. 791, 25 L. Ed. 921; State v. Cincinnati Gas Light and Coke Co., 18 Ohio St. 262; Parkhurst v. Salem (Or.) 32 Pac. 304; Saginaw Gas Light Co. v. Saginaw (C. C.) 28 Fed. 529, decided by Mr. Justice Brown, of this court; Long v. Duluth (Minn.) 51 N. W. 913, 32 Am. St. Rep. 547. See, also, Grand Rapids Electric Light & Power Co. v. Grand Rapids, etc., Co. (C. C.)

33 Fed. 659, opinion delivered by Mr. Justice Jackson at circuit. As bearing on the rule, see, also, Oregon Railway & Navigation Co. v. Oregonian Railway Co., 130 U. S. 1, 9 Sup. Ct. 409, 32 L. Ed. 837; Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55.

"The power, therefore, must be granted in express words or necessarily to be implied. What does the latter mean? Mr. Justice Jackson, in Grand Rapids, etc., Power Co. v. Grand Rapids, etc., supra, says: ' * * * that municipal corporations possess and can exercise only such powers as are "granted in express words, or those necessarily or fairly implied, in or incident to the powers expressly conferred, or those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable." ' "

Mr. Justice Brewer, delivering the opinion of the court in Jackson County Horse R. Co. v. Interstate Rapid Transit Ry. Co. (C. C.) 24 Fed. 307, says:

"The precise question is, had the city of Kansas the power to grant for a term of years the exclusive right to occupy its streets with street railroads? That question must be answered in the negative. Let me in the outset formulate two or three unquestioned propositions: (1) The Legislature has, as the general representative of the public, the power, subject to specific constitutional limitations, to grant special privileges; (2) it may, with similar limitations, grant the like power to municipal corporations as to all matters of a purely municipal nature; but (3) as the possession by one individual of a privilege not open to acquisition by others apparently conflicts with that equality of rights which is the underlying principle of social organization and popular government, he who claims such exclusive privilege must show clear warrant of title, if not also probable corresponding benefit to the public. Hence the familiar rule that charters, grants of franchises, privileges, etc., are to be construed in favor of the government. Doubts as to what is granted are resolved in favor of the grantor, or, as often epigrammatically said, a doubt destroys a grant."

Judge Sanborn in the case of the Illinois Trust & Sav. Bank v. City of Arkansas City, 76 Fed. 279, 22 C. C. A. 179, 34 L. R. A. 518, says:

"The general rule is that the Legislature alone has the power to make exclusive grants of this character, and that this authority does not vest in the municipality, unless it is expressly granted to it by its charter. It will be further conceded that, if a grant of a similar privilege in its streets, not exclusive, has been subsequently made by this city to another corporation, and that corporation was about to proceed to construct another system of water works in this city, neither the gas company nor the city itself could maintain a bill to enjoin such proceedings. Since it was beyond the power of the city to make the grant of the privilege exclusive, that portion of the grant would not sustain a bill to restrain the violation of its terms."

In the exercise of the sovereign reserved power possessed by the state under the Constitution, state Legislatures have in many cases granted exclusive rights, franchises and priviliges, and such grants have been upheld and enforced as exclusive. New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; New Orleans Water-Works Co. v. River, 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; Louisville Gas Co. v. Citizens' Gas Co., 115 U. S. 683, 6 Sup. Ct. 265, 29 L. Ed. 510; Tammany Water Works v. N. O. Water Works, 120 U. S. 64, 7 Sup. Ct. 405, 30 L. Ed. 563. But it is quite clear from a consideration of the fundamental principles of government and an examination of the adjudicated cases, defendant city under our Constitution possessed neither the inherent power to make the exclusive contract claimed by complainant, nor did

the Legislature of the state confer, or attempt to confer upon it, such plenary power, under the statutory provisions quoted, from the organic law of the city. Before the contention of complainant in this suit to the exclusive right claimed may be upheld, it must appear the Legislature of the state, in express terms, or by necessary and inevitable implication, delegated to defendant city, such sovereign and plenary power as once exercised by it exhausted the power to further contract in that regard during the life of the grant. This, as has been seen, it did not do. There are cases in actual or apparent conflict with the view here expressed, notably, City of Newport v. Newport Light Company et al., 84 Ky. 166. This case, however, was reviewed by Judge Brown at the circuit in Saginaw Gas Light Co. v. City of Saginaw (C. C.) 28 Fed. 529, and its reasoning disapproved. It is in conflict with the very great weight of authority, and its argument is inconclusive.

Again, it is thought by solicitors for complainant in this suit the recent case of California Reduction Co. v. Sanitary Reduction Works (decided by the Supreme Court, Nov. 27, 1905), 26 Sup. Ct. 100, 50 L. Ed. ——, is authority for the position taken by complainant here. In that case the supervisors of the city of San Francisco, by ordinance, granted to one F. E. Sharon, his associates and assigns, the exclusive right for a term of 50 years to handle and reduce the garbage and refuse of that city. This grant was upheld and defendants assuming to act under a subsequent grant made by the city were enjoined. From an examination of that case, it is seen section 11 of article 11 of the Constitution of that state provides:

"Any county, city, town or township may make and enforce within its limits all such local police, sanitary, and other regulations as are not in conflict with general laws."

By virtue of this provision of the organic law of the state, the full sovereign power with relation to the subject-matter of the grant was delegated to the city of San Francisco to be exercised in such manner as in the judgment of the supervisors of the city might seem proper, except in so far as any attempt to exercise the power conferred might conflict with the general laws of the state. The holding was, the power exercised by the city in the making of the grant in question was not prohibited by the general laws of the state, hence, valid. To distinguish, there, the city possessed plenary power derived from the organic law of the state over the subject-matter of the grant, except as its attempted exercise came in conflict with the general laws of the state. Here the organic law of the state confers no power upon the city, and the city can exercise no power not expressly or by necessary implication granted to it by the Legislature. This view of the controversy renders unnecessary a decision of the other question arising in the case, for it is apparent if the city had no power to grant the exclusive right claimed by complainant, such right if granted in terms would be void as to its exclusive feature, and would afford complainant no right to enjoin the further exercise of the power conferred upon the city.

It follows, the demurrer must be sustained.

It is so ordered.