GRAND RAPIDS E. L. & P. Co. *v.* GRAND RAPIDS E. E. L. & F. G. Co. *et al.*

(*Circuit Court, W. D. Michigan, S. D.* January 9, 1888.)

MUNICIPAL CORPORATIONS—POWERS—EXCLUSIVE PRIVILEGES.

A city charter gave the council power to make, amend, and repeal any ordinances deemed desirable for lighting the streets, and taking charge of them, but did not confer, in express terms, exclusive power over them. *Held,* that it did not, by implication, give the city control of the streets to the exclusion of the sovereign power of the state, and that an ordinance granting exclusive use of the streets for wires and poles for electric lights for 15 years was *ultra vires* and void.

In Equity.   Motion to dissolve preliminary injunction.

The Grand Rapids Electric Light & Power Company filed a bill to perpetually enjoin the Grand Rapids Edison Electric Light & Fuel Gas Company and others from erecting poles and wires in the streets of Grand Rapids, and obtained a temporary injunction.   The city of Grand Rapids had, by ordinance in 1880, given complainant exclusive right to use the streets for that purpose for 15 years, and in 1887, by ordinance, had given defendant the same privileges, but not exclusively.

*T. J. O'Brien* and *J. H. Campbell,* for defendant, on motion to dissolve the injunction.

Const. Mich. Art. 4, § 38, provides that the legislature may confer on cities such powers of a local, legislative, and administrative power as they see fit. Art. 15, § 13, gives the legislature power to incorporate cities.   Art. 15, § 13, provides that corporations may be formed under a general law, and that laws pursuant to this section may be repealed, altered, and amended.   Grand Rapids was incorporated under a special law.   Complainant was incorporated under Public Acts 1875, (with amendments of 1881, 1882,) 1 How. St. *c.* 124, §§ 4127–4161.   The charter of Grand Rapids March 29, 1877, tit. 3, § 10, gave the council power to make, alter, and repeal ordinances for (25) regulating the lighting streets and alleys, also (35) general care of the streets, (36,) lighting public lamps, and their erection, (title 6, § 1,) supervision of streets, highways, etc., and the repairing, cleaning, and altering of the same.   The city had no power thereunder to grant exclusive use of the streets for the purposes stated.   It had only (1) the powers directly granted; (2) those necessarily implied; (3) those indispensable to the proper purposes of the corporation. 1 Dill. Mun. Corp. § 89, and cases cited; *Detroit* v. *Blackeby,* 21 Mich. 84. The legislature has paramount authority over the public ways.   2 Dill. Mun. Corp. §§ 656, 680, and cases cited.   The city could confer no greater power than it had, and to give must have exclusive control of the streets.   *East Hartford* v. *Bridge Co.,* 10 How. 511; *Minturn* v. *Larue,* 23 How. 435; *Harrison* v. *State,* 9 Mo. 530; *McEwen* v. *Taylor,* 4 G. Greene, 532; *Wright* v. *Nagle,* 101 U. S. 796.   The city had no express exclusive control of the streets. It was not implied.   In *Grand Rapids* v. *Whittlesey,* 33 Mich. 109, the provisions of the charter of 1871, relating to the matters in controversy, were substantially as now.   The court held their control of the streets was that given usually to cities.   In *Gale* v. *Kalamazoo,* 23 Mich. 344, the trustees gave Gale a contract to erect a market house, with an agreement that there should be no other; held invalid.   *Wright* v. *Nagle,* 101 U. S. 791: Held that an inferior court, which granted exclusive privileges for ferries and bridges over certain

rivers, had no power to do so. In *Minturn* v. *Larue*, 23 How. 435, the city of Oakland had under its charter power to make and regulate bridges, etc., but the court held that as the grant did not express the intent of the legislature to vest their exclusive power over the subject in Oakland, a grant of exclusive right of ferry to complainant was *ultra vires*. See *Railroad Co.* v. *Railway Co.*, 24 Fed. Rep. 306, deciding an exclusive grant of streets for a horse-railroad void; also, *Gas Co.* v. *City of Saginaw*, 28 Fed. Rep. 529, holding the exclusive right to manufacture gas void; also, *State* v. *Gas Co.*, 18 Ohio St. 262, and *Gas-light Co* v. *Gas Co.*, 25 Conn. 19. To the same effect, see *Chicago* v. *Rumpff*, 45 Ill. 90, and *Railway Co.* v. *Railway Co.*, 79 Ala. 465. In *City of Brenham* v. *Water Co.*, (Tex.) 4 S. W. Rep. 143, the city had the power to contract and to provide the city with water. A water company was organized under the general law, and the court held a grant of exclusive right to furnish water by an ordinance of the city was *ultra vires*, adopting 1 Dill. Mun. Corp. § 89. The following authorities sustain the doctrine that unless the exclusive power is expressly given to the city, it cannot confer it: *Logan* v. *Pyne*, 43 Iowa, 524; *Harrison* v. *State*, 9 Mo. 526; *Davenport* v. *Kleinschmidt*, (Mont.) 13 Pac. Rep. 249; *Railroad Co.* v. *Railroad Co.*, 12 Fed. Rep. 308. In *Water Co.* v. *Hydraulic Co.*, 10 Atl. Rep. 170, the court sustained an exclusive grant by a city because confirmed by the legislature. *State* v. *Mayor*, etc., 3 Duer. 119, the court held that the city charter did not give, in express terms, the power to grant the right to build a horse-railway on Broadway, and that its existence could not be implied. See *Railroad Co.* v. *Railroad Co.*, 10 Wall. 52; *Gas Co.* v. *Middletown*, 59 N. Y. 228; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *Appeal of Gas Co.*, 4 Atl. Rep. 733; 2 Dill. Mun. Corp. § 692, and cases cited; 1 Dill. Mun. Corp. § 362, and cases cited; Cooley, Const. Lim. 207. Of the cases cited by complainant Dillon, (Vol. 2, § 695) says, of *Gas-light Co.* v. *Gas Co.*, 25 Conn. 19, that however it may be as to the power of the legislature, to grant exclusive privileges, a municipal corporation cannot, unless expressly given to them or necessarily implied, citing *People* v. *Bowen*, 30 Barb. 24; *State* v. *Gas Co.*, 18 Ohio St. 262; *Slaughter-house Cases*, 16 Wall. 36. The court, in *City of Quincy* v. *Bull*, 106 Ill. 337, did not pass on the point, and in *Smith* v. *City of Newbern*, 70 N. C. 14, held the city could build a market. In *Grant* v. *City of Davenport*, 36 Iowa, 396, the legislature gave the city a right to make an exclusive contract. In *Gas Co.* v. *City of Des Moines*, 44 Iowa, 505, the court did not pass on the question of exclusive privileges. In *Brown* v. *Duplessis*, 14 La. Ann. 842, the city sold the right to use the streets for a horse-railroad for a certain number of years, and the court could not say it was an abuse of power. In *City of Louisville* v. *Weibee*, 1 S. W. Rep. 605, the court held that, by an exclusive contract to remove dead animals for one year, with option of renewal, the city did not surrender her right to control the public health, and must perform her contract. The case of *Costar* v. *Brush*, (1841,) 25 Wend. 628, sustaining an exclusive grant of ferry privileges is founded upon a doctrine rejected by federal and state courts. In *Water-Works Co.* v. *Atlantic City*, 39 N. J. Eq. 367, the court held that the exclusive power given was founded on the franchise held by the company from the legislature. In *Railroad Co.* v. *Railway Co.*, 33 N. W. Rep. 610, the council were to "authorize or forbid" horse-railway companies, and the court held that an exclusive privilege for 30 years could be given if a larger and better service could thereby be obtained.

*Eugene H. Lewis*, for defendant.

The power given the city to grant a privilege to use the streets for wires and poles did not necessarily imply exclusive privilege, and does not come under the rule of *Jones* v. *Richmond*, 18 Grat. 517, where the charter of the city

of Richmond gave power to pass by-laws "for peace, comfort, and safety," and the city counsel, at the time of evacuation, fearing disorder, destroyed all liquors. The city had the power to "regulate the lighting" of the streets; the ordinance deprives them of that power. The legislature of Maryland, in 1797, gave the corporation of Gorgetown power to grade and level the streets. In *Goszler* v. *Corporation*, 6 Wheat. 593, the plaintiff owned certain lots upon a street, which had been graded under an ordinance establishing the grade forever. Chief Justice MARSHALL held that a later ordinance changing the grade was valid, and that the corporation could not abridge its own legislative powers. 2 Dill. Mun. Corp. § 685. The charter of Grand Rapids confers the power to repeal its ordinances. The act granting the privileges to the defendant repealed the exclusive privilege given complainant. The ordinance of a municipal corporation must conform to the statute giving the corporation power to pass the ordinance. 1 Dill. Mun. Corp. § 91; *Petersburg* v. *Metzker*, 21 Ill. 205; *Thompson* v. *Schermerhorn*, 6 N. Y. 92. The right to repeal bears close analogy to the provision in the constitution of Michigan, that all laws creating corporations may be amended, altered, or repealed. In *Water-Works* v. *Schottler*, 110 U. S. 347, 4 Sup. Ct. Rep. 48, the court held that the provision in the constitution "that all special or general acts passed pursuant to this section may be altered, from time to time, or repealed," should be considered in connection with the charter granted. See, to the same effect, *Nazro* v. *Insurance Co.*, 14 Wis. 319; *Railroad Co.* v. *Marsh*, 17 Wis. 13; *Chapin* v. *Crusen*, 31 Wis. 209; *Railway Co.* v. *Board Sup'rs*, 35 Wis. 257; *Miller* v. *State*, 15 Wall. 478. In none of these cases was the language in the constitution in favor of the reservation of the right to repeal stronger than the language in the charter.

*Blair, Kingsley & Kleinhaus,* for complainant.

The case involves a federal question. *Murray* v. *Charleston*, 96 U. S. 440; *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 Sup. Ct. Rep. 1064; *Wright* v. *Nagle*, 101 U. S. 791; *Gas-Light Co.* v. *City*, 28 Fed. 529; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691, 2 Sup. Ct. Rep. 732. If the ordinance is valid, it is the duty of the court to issue an injunction. *Railway Case*, 23 Cent. Law J. 467; *Gas Co.* v. *Dwight*, 29 N. J. Eq. 242; *Water Co.* v. *Rivers*, 115 U. S. 674, 6 Sup. Ct. Rep. 273. The granting exclusive rights to ferries, railroads, water, or gas companies is not a monopoly. Cooley, Torts, 277; *People* v. *Marx*, 2. N. E. Rep. 34, note; *Landing Co.* v. *Slaughter-House Co.*, 111 U. S. 746, 4 Sup. Ct. Rep. 652; *Water-Works Co.* v. *Water-Works Co.*, 7 Sup. Ct. Rep. 405. The legislature had the right to give the power claimed, and could do so by the agency of a municipal corporation, (*State* v. *Gas-Light Co.*, 18 Ohio St. 293; *Maybury* v. *Gas-Light Co.*, 38 Mich. 154; *Murray* v. *Charleston*, 96 U. S. 440;) either by express terms, or by direct and necessary implication, (*State* v. *Gas-Light Co.*, 18 Ohio St. 293.) A corporation for municipal purposes is not a mere privilege, but an absolute right. *People* v. *Hurlbut*, 24 Mich. 108; Cooley, Const. Lim. 188, 189; *Ex parte Mirande*, 14 Pac. Rep. 888; *People* v. *Common Council*, 28 Mich. 237. In exercising the portion of the pure legislative authority which properly belongs to the state, the municipality is confined to the powers clearly granted. *Leonard* v. *City of Canton*, 35 Miss. 189; 1 Dill. Mun. Corp. § 91, note 3; *People* v. *Hurlbut*, 24 Mich. 81. But in local and private matters it alone is concerned, and not the state. *Fund Soc.* v. *Philadelphia*, 31 Pa. St. 183; 1 Dill. Mun. Corp. § 27; *Gale* v. *Kalamazoo*, 23 Mich. 351; *People* v. *Hurlbut*, 24 Mich. 103; *Hill* v. *Boston*, 122 Mass. 359; *Bailey* v. *Mayor*, 3 Hill, 539; *Detroit* v. *Corey*, 9 Mich. 184; *People* v. *Common Council*, 28 Mich. 228. The courts very liberally find power in municipalities to issue bonds, (*City of Galena* v. *Corwith*, 48 Ill. 423;) erect water-works, (*Davies* v. *Flewellen*, 29 Ga. 50;) construct a break-

water, (*Nazro* v. *Insurance Co.*, 14 Wis. 319;) to provide for electric lights, (*Attorney Gen.* v. *Detroit*, 55 Mich. 181, 20 N. W. Rep. 894;) and many other purposes. *Sturtevants* v. *City of Alton*, 3 McLean, 393; *French* v. *Quincy*, 3 Allen, 9; *People* v. *Harris*, 4 Cal. 9; *Torrent* v. *Muskegon*, 47 Mich. 115, 10 N. W. Rep. 132; *Willard* v. *Newburyport*, 12 Pick. 227; *Pully* v. *Spangenberg*, 5 La. 410; *City of Wyandotte* v. *Zeitz*, 21 Kan. 649; *City Council* v. *Church*, 4 Strob. 306; *Town Council* v. *Pippin*, 31 Ala. 542; *Smith* v. *New bern*, 70 N. C. 14; *Commissioners* v. *Common Council*, 28 Mich. 250. The granting of the use of the streets to a gas company in no way concerns the state. *People* v. *Walker*, 38 Mich. 156; *Attorney Gen.* v. *Detroit*, 55 Mich. 181, 20 N. W. Rep. 894.

All municipal corporations have all powers necessary to carry out an expressly granted power, (*City of Galena* v. *Corwith*, 48 Ill. 425;) and a thing within the intent of the grant is as much a part of it as if expressed, (*Thomas* v. *Railroad Co.*, 101 U. S. 82; *Railroad Co.* v. *Railroad Co.*, 13 How. 71; *Downing* v. *Road Co.*, 40 N. H. 232; *U. S.* v. *Freeman*, 3 How. 563; *City of Quincy* v. *Bull*, 106 Ill. 350; 1 Dill. Mun. Corp. § 89, 2 Dill. Mun. Corp. § 695.) See, for a complete exposition of the doctrine of implied powers, the *Newbern Case*, 70 N. C. 18. It is very clearly stated by Chief Justice SHAW to be such as, in the minds of reasonable men, is necessary to accomplish the object for which the grant was made. *Springfield* v. *Railroad Co.*, 4 Cush. 63; cited and approved, *Railroad Co.* v. *Hall*, 91 U. S. 343. The right to provide electric lights was established in *Putnam* v. *Grand Rapids*, 58 Mich. 416, 25 N. W. Rep. 330; *Hobart* v. *City of Detroit*, 17 Mich. 257. No one could have been induced in 1880 to put up electric lights except on obtaining an exclusive privilege. The grant was reasonable therefor, and much different from one in perpetuity. *Railway Co.* v. *Railway Co.*, 33 N. W. Rep. 610; *Birmingham St. Ry. Case*, 23 Cent. Law J. 467; *Louisville* v. *Weible*, 1 S. W. Rep. 606; *Davenport* v. *Kleinschmidt*, 13 Pac. Rep. 249. An existing necessity often confers powers which do not necessarily exist. *Jones* v. *Richmond*, 18 Grat. 517; *Coldwater* v. *Tucker*, 36 Mich. 474; *Clason* v. *Milwaukee*, 30 Wis. 316; *Meat-Shop Case*, 44 Mo. 547. It has been held lately that the granting of exclusive privileges would be sustained when such grant was necessary to carry out special powers granted, although there was no express power to grant exclusive privileges. *Des Moines St. Ry. Case*, 33 N. W. Rep. 610; *Birmingham St. Ry. Case*, 23 Cent. Law J. 467; *Water-Works* v. *Atlantic City*, 39 N. J. Eq. 367.

It is objected that the council granted away legislative powers held in trust. The legislature can, except as barred by the constitution by an irrepealable act, grant exclusive rights to build bridges, ferries, etc., and it is no answer that one legislature could not preclude its successors of the performance of such a trust. *Langdon* v. *Mayor*, 93 N. Y. 157; *Brenham Case*, 4 S. W. Rep. 143. If the power to grant the ordinance exists in the charter it is valid. *Union Co.* v. *Crescent City Co.*, 111 U. S. 746, 4 Sup. Ct. Rep. 652; *Water-Works* v. *Rivers*, 115 U. S. 674, 6 Sup. Ct. Rep. 273; *Water-Works* v. *Water-Works*, 120 U. S. 64, 7 Sup. Ct. Rep. 405.

It is objected that it ties the hands of the council from providing for the changing necessities of the city. Such an objection applies to contracts, but not to franchises, and contracts of such a business character as for water, gas, or the use of a building are as binding as private contracts, (*Valparaiso* v. *Gardner*, 97 Ind. 4; *Fund Soc.* v. *Philadelphia*, 31 Pa. St. 189; *Gale* v. *Kalamazoo*, 23 Mich. 351,) and without a restraining clause in the charter a city can make such a contract for a reasonable term of years, (*Valparaiso* v. *Gardner*, 97 Ind. 1, *Indianapolis* v. *Gas Co.*, 66 Ind. 396; *Fund Soc.* v. *Philadelphia*, 31 Pa. St. 180; *Moses* v. *Risdon*, 46 Iowa, 251; *Gale* v. *Kalamazoo*, 23 Mich. 351.) In *Water Co.* v. *Bridgeport Co.*, 10 Atl. Rep. 170, the court,

in sustaining an exclusive right of laying water pipes said: "Communities may endure monopolies, but they cannot endure the violation of contracts."

JACKSON, J.    The leading and material facts in relation to the matter in controversy, and on which rest the proper determination of the question involved in the present motion, are, briefly, these:    By the charter of the city of Grand Rapids the common council thereof were invested with the following powers and duties relating to the matters under consideration:

"Tit. 3, Sec. 10. The common council   *   *   *   shall have power within said city to enact, make, continue, establish, *modify, amend* and *repeal such ordinances, by-laws,* and *regulations* as they deem desirable, within said city, for the following purposes:"

"*Twenty-fifth.* To regulate the lighting of the streets and alleys, and the protection and safety of the public lamps, and to employ a suitable person to superintend the same, to prescribe his duties, and fix the compensation therefor."

"*Thirty-fifth.* To provide for the cleaning of the highways, streets, avenues, lanes, alleys, public grounds and squares, crosswalks and sidewalks in said city, and to require the owners or occupants of property on any paved street or streets of said city to clean the said streets in front of, or adjacent to, the premises occupied by them to the center of said streets; to prohibit and prevent the incumbering thereof in any manner whatsoever, and to remove any obstructions therefrom, and to prevent the exhibition of signs on canvass or otherwise in and upon any vehicle standing or traveling upon the streets of said city; to control, prescribe, and regulate the mode of constructing and suspending awnings, and the exhibition and suspension of signs thereon; to control, prescribe, and regulate the manner in which the highways, streets, avenues, lanes, alleys, public grounds and spaces within said city shall be used, and to provide for the preservation of and the prevention of willful injury to the gutters in said highways, streets, lanes, and alleys; to direct and regulate the planting, and provide for the preservation of ornamental trees therein.

"*Thirty-sixth.* To provide for and regulate the lighting of public lamps, and the erection of lamps and lamp-posts and suitable hitching-posts; to prohibit all practices, amusements, and doings in said streets having a tendency to frighten teams and horses, or dangerous to life or property; to remove or cause to be removed therefrom all walls and structures that may be liable to fall therein, so as to endanger life or property."

"Tit. 6, sec. 1. The common council shall have the care and supervision of the highways, streets, bridges, lanes, alleys, parks, and public grounds in said city, and it shall be their duty to give directions for the repairing, preserving, improving, cleansing, and securing of such highways, bridges, lanes, alleys, parks, and public grounds, and to cause the same to be repaired, cleansed, improved, and secured, from time to time, as may be necessary; to regulate the roads, streets, highways, lanes, and alleys, already laid out or which may hereafter be laid out, and to alter such of them as they shall deem inconvenient, subject to the restrictions contained in this title."

The complainant is a corporation, organized March 31, 1880, under the laws of the state of Michigan, and its powers and franchises are defined by the statute under which it was created and organized.    It was invested by the law of its creation with no *exclusive* rights, franchises, or privileges.    On the nineteenth day of April, 1880, the common council of Grand Rapids, deeming it expedient and for the welfare and advan-

tage of the city that a system of lighting by electricity should be established therein, for the purpose of inducing the complainant to undertake the work of supplying the city with electric light, or lights, passed the following ordinance:

"An ordinance authorizing the ·Grand Rapids Electric Light & Power Company,' to erect the necessary lines for the transmission of power and light by means of electricity in the city of Grand Rapids. Passed April 19, 1880. First published April 22, 1880. Amended April 27, 1880.

. "The common council of the city of Grand Rapids do ordain as follows:

"Section 1. That the 'Grand Rapids Electric Light & Power Company,' as a body corporate under that or such other name as the said corporation may hereafter adopt, be and they are hereby authorized *to use exclusively, for the term of fifteen years from the passage of this ordinance, any and all* the streets, lanes, alleys, bridges, and public grounds of said city, including any territory that may be hereafter added to the same, for the purpose of laying down or suspending on suitable poles or supports in said streets, lanes, alleys, bridges, and public grounds from time to time, as said company may desire, wires, cables, or other conductors of electricity for distributing and supplying said city and the inhabitants thereof with electricity for light and power: provided, that the common council of said city shall have the control and direction of the places, times and circumstances in which said lines, wires, cables, poles, or supports may be erected or laid down, and that said company shall not unnecessarily obstruct the passage of any such street, lane, alley, bridge, or public ground, and shall, within a reasonable time after making any opening or excavation for the purposes aforesaid, repair and leave said street, lane, alley, bridge, or public ground in as good condition as before said opening or excavation was made and under the direction and to be approved of by the city surveyor.

"Sec..2. The privileges hereby granted are upon the express condition that said company shall, on or before the first day of January next, commence the work of manufacturing electricity for lighting said city, and shall supply the same to said city and the inhabitants thereof at a reasonable price along the lines which are or shall thereafter be constructed by said company, and that they shall extend their said lines of conductors, and increase their facilities for the producing the electricity, as the demand for its use, at such reasonable price, may warrant.

"Sec. 3. Any temporary failure on the part of said corporation to perform any of the conditions of this ordinance when such failure is occasioned by any unavoidable accident, it shall not be construed as a forfeiture of the privileges hereby granted: provided the same shall be repaired within a reasonable time.

"Sec. 4. That if said company shall make any opening or excavation in the streets, lanes, alleys, walks, or public grounds of said city, the same shall be done after notice to and under the direction of the common council or city surveyor, and said company, in case of any such excavation or other interference with any street, alley, or public ground, shall forthwith, under direction of the city surveyor, restore the street, alley, or ground to its original condition, and all such places shall be left by said company in as good condition as before disturbed by the company, and in case of failure to do so within what the common council or city surveyor shall deem a reasonable time, the said common council or city surveyor may cause it to be done, and the company shall be liable to pay the expense thereof on demand, and in case the erection of wire cables or other conductors of electricity by said company shall be necessary over the streets, alleys, and public grounds of said city, then the said company shall place the same at such places, and secure the same in such manner, as shall be approved by the common council, and this is not to grant permission to erect such conductors over any such streets, alleys, or grounds,

except at such places as shall be agreed to by said common council; but it is expressly provided that in no case shall lines used as conductors of electricity be placed over and above the lines and wires used by the city in its fire-alarm telegraph apparatus, and that the location at which conductors shall be maintained shall at all times be subject to the control of the common council.

"Sec. 5. The said company shall be liable to compensate the city of Grand Rapids and all corporations and persons for all damages that may grow out of the use of the public ways and grounds of said city for their said business, and for having opened or incumbered any street, alley, sidewalk, or public space, or from any other cause whatever, connected with the franchise hereby conferred, and said corporation shall at all times be subject to all ordinances now in existence, or which may hereafter be passed, relative to the streets, alleys, and public grounds in said city, and the manner of making improvements therein, and all ordinances relating to the means of public protection while excavations are being made in said streets, alleys, and public grounds; and said corporation shall be liable for any loss the city of Grand Rapids may suffer in case the city shall be liable for damages on account of anything that shall grow out of the operation or business of said corporation, or those acting under its authority, or under its agents.

"Sec. 6. (As amended April 27, 1880.) The city of Grand Rapids expressly reserves the right to alter and amend this ordinance in any manner necessary for the safety or welfare of the public, and, in case it is necessary to do so, to protect the public interest; but the exclusive rights and privileges hereby granted shall not be impaired or abridged by such alteration or amendment.

"Sec. 7. Said company shall, within thirty days after the acceptance of this ordinance, execute to the city of Grand Rapids a bond in the penal sum of twenty thousand dollars, with sufficient sureties, to be approved by the common council and filed in the office of the city clerk, conditioned to compensate the city for all damages, costs, expenses, and outlays which may come to said city by reason of the actions of the said company, or its agents, servants or employes, or persons doing service upon the works of said company, and from all loss and damage the city shall suffer from any cause that shall grow, directly or indirectly, out of the granting this franchise, or out of anything that shall be done under the name or for the company operating under the same, and, said bond shall also be conditioned to perform each and every requirment of this ordinance by said company to be by them performed, and to obey all ordinances of said city passed or that may be passed. Said bond shall be renewed once in every two years, and as much oftener as the said counsel shall require by resolution.

"Sec. 8. That the common counsel may, by resolution, at any time direct the said company to erect upon any streets or places in said city, the necessary apparatus for furnishing the residents light and power by electricity, as contemplated by this ordinance, and in case of the passage of such resolution, the said company shall signify its acceptance of the resolution and willingness to forthwith proceed to erect such apparatus in such streets and places, and to furnish light and power to such as may desire; and in case said company shall, for thirty days after notice of such resolution, neglect to accept the same, and proceed to such erection of such apparatus, then the exclusive right of said company to the use of such streets and places shall cease, and the said council may grant the use of said streets and places to some other person or company.

"Sec. 9. This ordinance shall take effect from and after its acceptance by the president and directors of the said 'Grand Rapids Electric Light and Power Company,' which acceptance shall be filed with the city clerk within thirty days from and after the passage of this ordinance."

This ordinance was duly accepted by the complainant, who thereafter proceeded at considerable expense to erect works, and extend its wires, in order to supply the city with electric light. These works were still being maintained, and the ordinance substantially complied with by the complainant, when, on May 20, 1887, the common council of Grand Rapids passed an ordinance granting to the defendant, the Grand Rapids Edison Electric Light & Fuel Gas Company, a corporation organized March 30, 1887, under the General Laws of Michigan, for the purpose of supplying electricity for light and power, the right to use the streets of said city for the purpose of erecting supports, running wires or cables, etc., in the distribution of electric lights throughout the city. The defendant accepted said ordinance, which contained the same general provisions as the ordinance of April 19, 1880, except that it conferred no exclusive rights or privileges, and was proceeding with the erection of its works, and the running of its wires and cables, when the complainant filed in this court its present bill, claiming that its acceptance of the ordinance of April 19, 1880, constituted a contract with the city of Grand Rapids, which conferred upon it the *exclusive* right to the use of the streets, lanes, alleys, bridges, and public grounds of said city for the purpose of supplying the same and the inhabitants thereof with electric light; that the ordinance of May 20, 1887, granting to the defendant, the Grand Rapids Edison Electric Light & Fuel Gas Company, the right to use said streets, etc., for the purpose of distributing its electric light and power throughout said city, was an *impairment* of the complainant's contract rights under the prior ordinance of 1880; and praying that said defendant company, its officers and agents, who are made co-defendants, be enjoined from using the streets of Grand Rapids for the purpose aforesaid. A preliminary injunction was granted, and the defendant corporation, having since filed its answer, now moves to dissolve that injunction. Several grounds have been presented and urged in support of this motion, but, in the view which the court takes of the legal principles involved in the case, there is only *one* controlling question to be settled and determined in order to a proper disposition of the present application, and that is, were the common council of Grand Rapids, under the city's charter powers, invested with the requisite authority to confer upon the complainant the *exclusive* right to use the streets of that city for the purpose of running its electric wires, cables, and supports under or over the same? In other words, had the common council the power, under the city's charter, to grant to complainant the *exclusive* right and privilege of using the city's streets for said purpose?

It may be considered as settled by the authorities that the complainant's acceptance of the ordinance of 1880 constituted a contract between it and the city of Grand Rapids; but the *exclusive* right to the use of the streets which this ordinance undertakes to confer upon the complainant for the period of 15 years, and which it is claimed formed an essential and material part of the contract, and which it is insisted the ordinance of May 20, 1887, *impairs,*—presents the *only* federal question on which

the jurisdiction of this court to hear and determine the controversy between the parties can be rested. So far, therefore, as this court is concerned, its action in sustaining or overruling the present motion, or in dissolving or continuing in force the injunction restraining the defendant corporation from using the streets of Grand Rapids under the ordinance of May 20, 1887, depends upon the question above stated, *i. e.*, whether the common council, under the city's charter, had the power to grant the complainant the *exclusive* right of using the streets of the city for the purposes aforesaid. It is conceded that in the charter of Grand Rapids, in force when said ordinance of 1880 was passed, there is no *express* power or authority conferred upon the common council to make such a grant of *exclusive* rights and privileges in, to, or over the streets of the city. The authority for the making of this *exclusive* grant must, therefore, as complainant's counsel properly admit, be found and sustained, if at all, upon what are called the *implied* powers of the common council. It is too well settled to need the citation of authorities in its support that municipal corporations, which are mere political agencies of the government, forming but parts of the machinery employed in carrying on the affairs of the state, possess and can exercise *only* such powers as are "granted in *express words,* or those *necessarily* or *fairly* implied in or incident to the powers expressly conferred, or those *essential* to the declared objects and purposes of the corporation, not simply convenient, but *indispensable.*" Implied powers, says Judge Cooley, (Const. Lim. marg. p. 194,) "are such as are *necessary* in order to carry into effect those expressly granted, and which must therefore be presumed to have been within the intention of the legislative grant." The courts of the country, state and federal, have not been disposed to extend or enlarge the power of municipalities by implication; on the contrary, they have, in the main, applied to their charter powers substantially the same rule of strict construction that is applied to charters of private incorporation, on the ground, as stated in Cooley's Constitutional Limitations, (marg. p. 195,) that "the reasonable presumption is that the state has granted, in clear and unmistakable terms, all that it has designed to grant at all." In *Minturn* v. *Larue,* 23 How. 436, NELSON, J., speaking for the court, says:

"It is a well-settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public."

In *Railroad Co.* v. *Canal Com'r,* 21 Pa. St. 22, the rule is thus stated by the supreme court of Pennsylvania:

"When a state means to clothe a corporate body with a portion of her own sovereignty and to disarm herself to that extent of the power that belongs to her, it is so easy to say so, that we will never believe it to be meant when it is not said. In the construction of a charter to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation."

· To the same effect is the language of the supreme court in the case of *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 666; and *Bridge* v. *Bridge*, 11 Pet. 420. Judge *Dillon*, in his note to section 91 of *Municipal Corporations*, (3d Ed.) pp. 118, 119, after citing numerous authorities announcing the same general rule, says: .

"The principle of strict construction should not be pressed in any case to such an unreasonable extent as to defeat the legislative purpose fairly appearing upon the entire charter or enactment. Perhaps the rule as it is briefly expressed in the text, best embodies the result of the adjudications upon this point, namely, *if, upon the whole, there be fair, reasonable and substantial doubt* whether the legislature intended to confer the authority in question, particularly if it relates to a matter extra-municipal or unusual in its nature, and the exercise of which will be attended with taxes, tolls, assessments, or burdens upon the inhabitants, or oppress them, or abridge natural or common rights, or divest them of their property, the doubt should be resolved in favor of the citizen and against the municipality."

When it is considered that corporations, whether public or private, are the creatures of the legislative department of government, existing solely and alone by virtue of the sovereign will, and exercising *only delegated authority* of the state, the strict rule of construction applied to their powers is manifestly the correct one. This principle necessarily follows from the relation corporations occupy to the state. A municipal corporation is not a *"regnum in regno,"* but an instrumentality, established by legislative enactment, to which certain powers of action are given for defined public purposes. The corporation may, through its proper officers, perform all acts or make all such contracts and incur all such liabilities as come legitimately within the powers conferred upon it; but all acts and contracts beyond the scope of the powers granted are void. These fundamental principles lie at the foundation of the law relating to all corporations.

Before applying these general principles and rules for the construction of the *delegated* powers granted to corporations, whether public or private, it is proper to call attention to the fact that municipalities do not ordinarily or usually posses *exclusive* control over their streets; on the contrary, it is well settled by authority that the streets of a city are *public highways*, which it is the province of the government, by appropriate means, to render safe and convenient for the use of the public. "Public streets, squares, and commons, unless there be some special restriction when dedicated or acquired, are for the *public use,* and the use is none the less for the *public at large,* as distinguished from the municipality, because they are situated within the limits of the latter, and because the legislature may have given the supervision and control of them to the local authorities. The legislature of the state represents the public at large, and has full and paramount authority over all public ways and public places." "To the commonwealth here," says Chief Justice GIBSON, "as to the king of England, belongs the franchise of any highway as a *trustee* of the public; and streets regulated and repaired by the authority of a municipal corporation are as much highways as are rivers,

railroads, canals, or public roads laid out by the authority of the quarter sessions." 2 Dill. Mun. Corp. (3d Ed.) § 656. "As the highways of a state, including streets in cities, are under the paramount and primary control of the legislature, and as all municipal powers are derived from the legislature, it follows that the authority of municipalities over streets, and the uses to which they may be put, depends entirely upon their charters or legislative enactments applicable to them." 2 Dill. Mun. Corp. (3d Ed.) § 680.

It is also well settled that the right to use the streets and other public thoroughfares of a city for the purpose of placing therein or thereon pipes, mains, wires, and poles for the distribution of gas, water, or electric lights for public and private use, is not an ordinary business in which any one may engage, but is a *franchise* belonging to the government, *the privilege of exercising which can only be granted by the state or by the municipal government of the city, acting under legislative authority.*

The present case involves no consideration of the *power* of the *legislature* to have conferred upon the complainant the exclusive right which it claims to the use of the streets of Grand Rapids for the purpose of laying down electric wires. It is conceded that the legislature of Michigan, subject to the constitutional reservation of the right to amend, alter, or repeal its charter, could have directly conferred upon the complainant the *exclusive* privilege of occupying the streets of the city for the distribution of electric light for public and private use. It is also conceded that the legislature, subject to the same constitutional reservation, had the authority to confer upon the common council of Grand Rapids the power to grant the same *exclusive* right; and the question is, has it delegated such authority to the city or its common council in the powers with which it has invested it or them? It is manifest that this question is not controlled by such cases as *Gas Co.* v. *Light Co.*, 115 U. S. 650, 6 Sup. Ct. Rep. 252; *Water-Works* v. *Rivers*, 115 U. S. 674, 6 Sup. Ct. Rep. 273; *Gas Co.* v. *Gas Co.*, 115 U. S. 683, 6 Sup. Ct. Rep. 265; *Water-Works* v. *Water-Works*, 120 U. S. 64, 7 Sup. Ct. Rep. 405; *Slaughter-House Cases*, 16 Wall. 36, and similar cases, relating to *legislative grants* of exclusive privileges, to be exercised within the limits of municipal corporations. These cases, however, establish one important principle, which has a direct bearing, and throws light upon, the question here involved, and that is, that a municipality, under the usual powers conferred of providing a supply of light and water for the city and its inhabitants, and of establishing and regulating its streets, does not possess the *exclusive* authority over those subjects; that notwithstanding the grant of such powers to a municipal corporation, the state, in whom rests the paramount rights to, and control over, all franchises and all public highways, may exercise its sovereign authority over all such subjects and confer rights and privileges, *exclusive* or not, as it may deem proper, within the limits of the municipality. These legislative grants of special franchises, whether exclusive or not, to be exercised in cities, are not sustained nor do they rest upon any *implied* repeal of powers previously delegated to the municipal corporation; but they are supported upon the ground of

sovereign right and authority which has never been parted with by the state.

To confer *exclusive* rights and privileges, either in the streets of a city or in the public highways, *necessarily involves the assertion and exercise of exclusive powers and control over the same.* Nothing short of the *whole sovereign power* of the state can confer *exclusive* rights and privileges in public streets, dedicated or acquired for *public* use, and which are held in *trust* for the *public at large.* This brings us directly up to the inquiry whether the legislature of Michigan has delegated to the city of Grand Rapids the state's sovereign power and control over the streets of that municipality. If the charter powers of the city have invested it or its common council with the *whole sovereign* power and exclusive control over the streets within its limits, it might lawfully confer upon the complainant the exclusive right of user, which the ordinance of 1880 undertook to grant. If, however, the city or its common council possessed no such exclusive power and control, then the grant which it attempted to make to complainant was "*ultra vires,*" and therefore void, so far as it purports to confer exclusive privileges in or over the streets of the city. It is not claimed that the city or common council was invested with such exclusive control and authority by virtue of the powers expressly granted in respect to the streets and public highways of the city. These express powers were "to provide for the cleaning of the streets, * * * to prohibit and prevent the incumbering thereof in any manner whatever, and to remove any obstructions therefrom; * * * to control, prescribe and regulate the *manner* in which the highways, streets, lanes, alleys, etc., within said city shall be used," with the further provision that "the common council shall have the care and supervision of the highways, streets, bridges, alleys, parks, and public grounds in said city, and it shall be their duty to give direction for the repairing, preserving, improving, cleansing, and securing of such high highways, etc., and to cause the same to be repaired, cleansed and improved, from time to time, as may be necessary; to regulate the roads, streets, etc., already laid out, or which may hereafter be laid out; and to alter such of them as they shall deem inconvenient, subject to the restrictions contained in this title." It is perfectly clear that these provisions of the charter confer no exclusive or sovereign power and control over the streets of the city. In respect to the subject of light, the common council are invested with power "*to regulate the lighting of the streets* and alleys, and the protection and safety of the public lamps,' and to employ a suitable person to superintend the same, to prescribe his duties and fix the compensation therefor; * * * to provide for and regulate the lighting of public lamps and the erection of lamps and lamp-posts." It is urged on behalf of complainant, that to enable the city to execute and carry into effect this authority conferred and duty imposed upon it, of providing for and regulating the lighting of the streets and public lamps, there should be implied the power and right of so using the streets as to secure that important object, and that if the grant of the *exclusive* privilege of using the streets is necessary to obtain the benefit, convenience, and advantage of an improved

system of lighting, such as electric lights afford, the common council could lawfully confer such exclusive right; or, to state the proposition in another form, it is this, that, under its powers upon the subject of lights, the city or common council could adopt a system of electric lights for the streets and public lamps, and having so determined, if it became *necessary,* in order to secure such improved light, to grant the *exclusive* privilege of using the public streets to the party who is to supply the same, the common council would have the implied power of conferring such exclusive right.    This presents a new and rather novel way of enlarging the power of municipal corporations, and of securing for them the prerogatives of sovereignty.    First, imply from the powers granted the right to adopt a new system of lighting the city's streets, (which may be a proper and legitimate implication,) then, when the common council has determined to procure such improved system, if difficulties arise, such as a demand for exclusive rights and privileges on the part of the company controlling the system, make another implication, from what is called the *necessity* of the case, and assume the right to confer sovereign franchises.    The proposition is not only unsound, but dangerous in the extreme, and wholly unsupported by authority.    Obstacles and difficulties, in the way of exercising powers fairly and reasonably implied from those expressly granted, can never operate to enlarge the original grant of authority.    A private corporation is chartered by the state without exclusive rights; it demands *exclusive* privileges and sovereign franchises in and over a city's streets as a *condition* of supplying it with electric light; that demand, it is said, creates a *necessity* in the common council to grant or concede such exclusive privilege, and that *necessity* warrants an enlargement, by implication, of the city's charter powers, and confers upon it authority which clearly did not exist prior to such necessity.    But, without dwelling on this position, which is utterly untenable, if we apply the rules of construction above mentioned, even adopting the more liberal one quoted from the note to section 91, Dill. Mun. Corp., to the powers which the city of Grand Rapids possesses over its streets and public lights, whether viewed separately or in connection with each other, it cannot be maintained that any power can be thence implied which would authorize the common council to make the exclusive grant contained in the ordinance of 1880.    Is there not a "fair, reasonable, and substantial doubt" whether the legislature intended, under the powers granted,—"to regulate the lighting of the streets and the protection of the public lamps," "to provide for and regulate the lighting of the public lamps," "to care for and supervise the streets, and to prescribe, control, and regulate the manner in which the highways, streets, etc., shall be used,"—to confer upon the common council of Grand Rapids the exclusive sovereign authority and control over the streets of the city? Is such exclusive control *necessarily implied,* in or *incident* to, the powers expressly granted, or *essential* to the declared objects and purposes intrusted to the city government?    Is not the granting of sovereign franchises in the public highways of the state a "matter extra-municipal or unusual in its nature?"    In confining the inhabitants of the city for the

period of 15 years to one company for their supply of the improved light, are they not deprived of the benefit of all competition during that period, and is there not thus imposed upon them the burden of a *quasi* monopoly, while they are at the same time prevented from availing themselves of any and all improvements which may be made in the systems of lighting? There can be but one answer to these questions, unless we disregard well-established principles, and ignore the authority of judicial decisions on the subject. The rights and beneficial user which the public or the inhabitants of cities have and are entitled to enjoy in the streets of a populous place are much more enlarged and various than with respect to ordinary highways, and there is a corresponding presumption against the intention to restrict or curtail such rights by conferring *exclusive* privileges therein.

Looking at the question of legislative intent from another stand-point, we find that it is not the policy of the state of Michigan to grant irrepealable franchises and privileges to private corporations. Article 15, § 1, of state constitution, provides that "corporations may be formed under general laws, but shall not be created by special act except for municipal purposes. *All laws passed pursuant to this section may be amended, altered, or repealed.*" Now by the ordinance of 1880, if valid, the complainant, a corporation organized under the laws of the state, has secured not only an exclusive franchise belonging to the state, but an *irrepealable privilege*, such as the legislature could not have conferred. Is it to be presumed that the legislature, under its constitutional authority "to confer upon incorporated cities such powers of a *local legislative and administrative character* as *they may deem proper*," intended to invest the common council of Grand Rapids with the power to grant irrepealable franchises in or over the streets of that city, and thereby confer upon the grantees privileges or franchises not subject to alteration, amendment, or repeal,—rights which the legislature could not itself have directly conferred. If such a presumption is proper, the conclusion is reached that the agencies or creatures of the state may, in the exercise of derivative and delegated powers, do what the legislature itself could not. This would violate the well-settled rule that the legislature cannot do indirectly, through the local government, what the people have by their constitution restricted it in doing directly. Dill. Mun. Corp. (2d Ed.) § 263. Again, by title 3, § 10, of the city's charter it is provided that "the common council * * * shall have power within said city to enact, make, continue, *establish, modify, amend, and repeal such ordinances*, by-laws, and regulations as they deem desirable within said city, for the following purposes," including the regulation of the streets, and lighting the same as above set out. It may well be doubted whether, under this grant of power, the common council can make or enact any ordinance which they may not afterwards modify, amend, or repeal as they deem proper or desirable. But without undertaking to definitely settle this, it is very clear, from the power thus conferred to modify, amend, and repeal all ordinances they might pass, that the legislature did not intend to bestow upon the common council authority to make exclusive grants of sovereign franchises and

privileges, such as would restrict the local government in meeting the the future wants and convenience of a growing city; or, if such legislative *intent* is to be inferred or implied from the powers expressly granted, there is reserved to the common council, not by implication, but in express terms, the sovereign right and power of amending, modifying, or repealing the ordinance which grants such exclusive rights. Reading that reserved authority into the ordinance of 1880 would leave the common council at liberty to pass the further ordinance of 1887, which is claimed to be so in conflict with the former as to impair its obligation.

But aside from these general considerations, the decided weight of judicial authority is against the right of the common council of Grand Rapids to confer upon complainant the *exclusive* franchise which the ordinance of 1880 attempts to grant. Thus, in Dillon on Municipal Corporations, (2d Ed.) § 547, it is said:

"A general grant of power in the charter of a city to cause it to be lighted with gas, while it carries with it, by implication, all such powers as are clearly necessary for the exercise of the authority expressly conferred, does not authorize the city council to grant to any person or corporation an *exclusive* right to use the streets of the city for the purpose of laying down gas-pipes for a term of years, and thereafter until the works shall be purchased from the grantee by the city. The court admitted that the power to light the city would authorize the council to contract for gas, and to grant the contracting party the use of the streets, but denied its authority to make such use *exclusive* for a *determinate* future period."

—Citing the well-considered case of the *State* v. *Coke Co.*, 18 Ohio St. 262, which has not only been followed in Ohio, (see *Railroad Co.* v. *Smith*, 29 Ohio St. 291,) but recognized with approval by the supreme court of the United States, (see *Gas Co.* v. *Light Co.*, (115 U. S. 659, 6 Sup. Ct. Rep. 252.) To the same effect, see Dill. Mun. Corp. (2d Ed.) §§ 61, 548, 549; Cooley, Const. Lim. Marg. pp. 38, 207, 208; *Gas-Light Co.* v. *Gas Co.*, 25 Conn. 19 (this case has been *qualified* in so far as it denied to the legislature itself the power to grant an exclusive franchise, but in respect to the city's power to do so it has not been questioned;) *Gas-Light Co.* v. *Saginaw*, 28 Fed. Rep. 529; *Gas Co.* v. *Middletown*, 59 N. Y. 228.

In harmony with these decisions, and resting upon the same general principles which they announce, are the cases which deny to municipalities, under the grant of power to establish and regulate ferries within their limits, the authority to confer exclusive ferry franchises upon others. See Dill. Mun. Corp. (2d Ed.) § 78; *East Hartford* v. *Bridge Co.*, 10 How. 511; *Minturn* v. *Larue*, 23 How. 435; *Harrison* v. *State*, 9 Mo. 530; *McEwen* v. *Taylor*, 4 G. Greene, 532; *Wright* v. *Nagle*, 101 U. S. 796. So, in reference to street-railways, it is well settled by the authorities that, under general powers, such as the city of Grand Rapids possesses over its streets and highways, its common council could not confer upon individuals or a private corporation the *exclusive* right to use the city's highways for street-railway purposes. See Cooley, Const. Lim. 207, 208; *Davis* v. *Mayor of New York*, 14 N. Y. 506; *Milhau* v. *Sharp*, 27 N. Y. 611; *Railroad Co.* v. *Smith*, 29 Ohio St. 291; *Railroad Co.* v. *Rail-*

v.33f.no.12—43

*road Co.*, 10 Wall. 52; *Railroad Co.* v. *Railway Co.*, 12 Fed. Rep. 308; *Railroad Co.* v. *Railway Co.*, 24 Fed. Rep. 306; *Railway Co.* v. *Railway Co.*, 79 Ala. 465; Dill. Mun. Corp. (2d Ed.) § 558, and cases cited.

The same principle is applied in reference to market-houses with which a municipality may be authorized to provide itself. Thus in *Gale* v. *Kalamazoo*, 23 Mich. 344, a contract was made between Gale and the municipal corporation, under and by the terms of which the former agreed to erect a suitable market-house building for the town, and place the same under the control of the president and trustees of the village for 10 years, at a stipulated rent. The president and trustees agreed that, during the continuance of the contract, there should be no other public market. It was held, Judge COOLEY delivering the opinion of the court, that this contract was invalid; that the governing authority could not abdicate any of its legislative powers, nor preclude itself from meeting, in the proper way, emergencies as they might arise; and that the contract created or vested a monopoly. In *Logan* v. *Pyne*, 43 Iowa, 524, under a power to license and regulate hackney carriages, omnibuses, and other vehicles, an ordinance was passed granting the exclusive privilege and franchise of running for hire omnibuses, for the purpose of carrying persons, etc. It was held that the granting of such exclusive rights was not within the city's power.

If the decisions of the supreme court of Michigan were in conflict with the forgoing authorities, we should respect them, and conform our own to their construction of the powers of their municipalities, under the general rule laid down by the supreme court of the United States that "when the settled decisions of the highest court of a state have determined the extent and character of the powers which its political and municipal organizations shall possess, the decisions are authoritative upon the courts of the United States." But after a careful review of the Michigan cases cited by counsel, I am unable to discover in them any want of harmony with the general principles laid down in the authorities which have been referred to. *Gale* v. *Kalamazoo*, 23 Mich. 344, is strictly in line with these authorities; nor can I find that it has been either questioned, qualified, or overruled. Again, in *Grand Rapids* v. *Whittlesey*, 33 Mich. 109, it was held, in conformity with the views herein expressed, that charter powers which conferred upon the municipality supervision and control of the streets of the corporation were nothing more than the powers possessed by township officers over country highways; that the power was the usual authority given cities over their streets, and nothing more. And in the case of *Grand Rapids* v. *Hydraulic Co.*, decided July, 1887, and reported in 33 N. W. Rep. 749, the supreme court of Michigan clearly assert and maintain the state's sovereign control and authority over the streets of Grand Rapids.

The Michigan cases cited by complainant's counsel in no way conflict with the foregoing positions and decisions, nor have they any direct bearing upon the question under consideration. They certainly do not establish that the supreme court of Michigan has given any broader or more liberal construction to the ordinary charter powers of the state's

municipal corporations than those herein expressed, and indicated by the authorities cited. I cannot discover in these decisions of the Michigan supreme court any general policy of the state in respect to municipalities and their powers, which may be legitimately invoked in support of the validity of the ordinance of 1880, so far as it attempts to grant the *exclusive* use of the city's streets to complainant for the purposes aforesaid.

There are several decisions of state courts which sustain the complainant's claim. The most direct and best reasoned is that of *City of Newport* v. *Light Co.*, 8 Ky. Law Rep. 22, in which it was held that "when a municipal corporation has the power, express or implied, to contract with others to furnish its inhabitants with the means of obtaining gas, at their own expense, it has the power to make a contract granting to a corporation the exclusive right to the use of its streets for that purpose for a term of years." The charter of the city contained no power, in express terms, authorizing the counsel to grant an exclusive privilege. The court rested its opinion on the grounds—*First*, that the power given the municipality to provide for lighting the city *included* the power to grant the exclusive right to the use of the streets for that purpose; and, *secondly*, that the Newport Light Company was invested, "in express terms, by a provision contained in its charter, with the right to *furnish any city, town, district, corporation, or locality, or any public institution, manufacturing establishment, or private premises*, with gas or other light, *for such time and on such terms as may be agreed on by the parties.*" The first of these grounds is in conflict with the decided weight of authority, and the second presents the doubtful question whether the right to contract, as conferred upon the private corporation, can operate to enlarge by implication the powers of the municipality, so as to authorize it to grant *exclusive* privileges. If this decision, which is subject to the criticism made upon it by Judge BROWN, in *Gas-Light Co.* v. *City of Saginaw*, 28 Fed. Rep. 537, can be sustained, it must stand upon the second, and not upon the *first*, ground upon which it was placed. In *Des Moines St. Ry. Case*, (Iowa,) 33 N. W. Rep. 610, the city was authorized to grant or prohibit the laying down of street-car tracks within its limits. The court held that, although there was no grant of power in express terms authorizing the council to confer an exclusive privilege in the use of the streets, that under the circumstances of the case, and to procure a better public service, the council could grant a valid, *exclusive* right for the *limited period* of 25 years, such contract being *necessary* to secure the service which it might not otherwise be able to obtain. We cannot assent to the correctness of this decision, nor to the proposition which the complainant's counsel urges in connection therewith, that the *reasonableness* of the period for which the *exclusive* right is conferred constitutes an element in determining the city's authority to make the grant. It is assumed that the authority to grant *exclusive* privileges, under implied powers, is *coextensive* with municipality's power to contract; that when the contract is reasonable as to the period of its duration, the authority to grant *exclusive* franchises during the same period must follow as a necessary implication.

The learned district judge for the Western district of Michigan, as I read his opinion, takes this view of the subject, when he says:

"It is not intended to declare that the common council might grant an *exclusive* franchise in *perpetuity*, or for an *unreasonable time*, any more than it could contract for an unlimited period of supply, or for an unreasonable time, for that might be regarded as an abuse of its powers and, for that reason, void; but short of that it would seem that the power in the one case is the equivalent of that in the other."

I cannot understand the principle on which this position is to be sustained. The authority of a municipal corporation to make contracts in respect to objects intrusted to its administrative care and supervision, as a local agency of the state, is *one* thing, while the power to grant *exclusive* franchises, which belongs to the sovereign, is *another* and *essentially different* matter. There is no necessary connection between them. To assert, therefore, that the latter is coextensive with the former, is simply to assume the very proposition which is being discussed and controverted. We have endeavored to show, upon principle and adjudged cases, that the authority of a municipality to grant *exclusive* privileges in its *streets* involves the exercise of the *whole* sovereign power over such highways; that nothing short of *exclusive* power and control will sustain the grant of *exclusive* rights. In the light of the authorities, which fully establish this proposition, how can it be successfully maintained that the judgment of the common council, or even of the courts, as to what is a *reasonable* period for the duration of a city's contract, is the measure or limit of its power in granting *exclusive* franchises in or over its streets? If the power rests in the city council to grant an exclusive privilege for 15 years, I cannot understand why the grant may not under the same authority be conferred for any longer period that may be determined on. The *power* requisite to confer an *exclusive sovereign franchise* for 15 years involves the exercise and operation of the same sovereign power which could make the grant for 100, or 1,000, years, or in perpetuity. If the authority does not exist to make the grant for the longer period, it does not exist to confer it for the shorter; for it requires the possession of the *whole exclusive* power and control to grant either the one or the other.

The next authority on the subject of exclusive privileges, cited and relied on by complainant's counsel, viz., *Water-Works v. Atlantic City*, 39 N. J. Eq. 367, did not turn upon the city's authority, but was rested mainly upon the legislative grant of the privilege. The chancellor said:

"Of the power of the city to make the contract, (apart from the covenant that it would not grant to any other person or corporation the right to lay water-pipes in the public streets) there can be no question. The city had the power, by its charter, to provide for a supply of water, and *in this power* is *implied* the power to furnish the supply by contract. * * * The right of the company to protection in this case does not depend upon the covenant. * * * The franchise *granted by the legislature* to the company is, by necessary implication, *exclusive.*"

—This is not, therefore, in conflict with the positions taken in this opinion. But if these, and other authorities cited by complainant's counsel not so directly in point, had decided what is claimed for them, they are

not in harmony with sound principles, nor with the great weight of adjudged cases on the question here involved, and they cannot, therefore, be recognized and followed.

This case has merited and has received at our hands the most careful investigation and consideration, and has been discussed more at large than is usual with the court, because of its importance, not only to the parties directly interested, but also to the public.   As the result of that investigation, and the principles herein announced, my conclusion is that so much of the ordinance of 1880 as undertook to confer upon complainant the exclusive use of the streets of Grand Rapids for the period of 15 years, for the purpose of laying down its wires therein or its poles thereon, etc., was beyond the power and authority of the common council, and therefore void; that complainant cannot, therefore, question the validity of the ordinance of May 20, 1887, giving to the defendant corporation permission to use the streets of the city for a similar purpose, nor has complainant any valid or legal grounds on which to restrain the defendant from erecting its works, laying its wires and cables, or placing its poles and supports for wires and lamps in, upon, and over the streets of said city.   I am of the opinion that the preliminary injunction which restrained the defendant temporarily from so doing was improvidently granted, and *should be dissolved.*   It is accordingly so ordered, at the costs of the complainant.